RICHARD B. GOETZ (S.B. #115666)
rgoetz@omm.com
ABBY SCHWARTZ (S.B. #250244)
aschwartz@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

TANCRED V. SCHIAVONI (*pro hac vice*)
tschiavoni@omm.com
GARY SVIRSKY (*pro hac vice*)
gsvirsky@omm.com
O'MELVENY & MYERS LLP
Times Square Tower, 7 Times Square
New York, NY 10036
Telephone: (212) 326-2000

ALAN S. BERMAN (S.B. #121954)
BERMAN & AIWASIAN
725 South Figueroa Street, Suite 1050
Los Angeles, California 90017
Telephone: (213) 833-3200

*Attorneys for Motor Vehicle Casualty Company, Central National Insurance Company of Omaha, and Century Indemnity Company, successor to Cigna Specialty Insurance Company f/k/a California Union Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>THORPE INSULATION CO.,[1]<br><br>Debtor. | Case No. 2:07-19271-BB<br><br>Chapter 11 (Jointly Administered with Case No. 2:07-20016-BB)<br><br>**MOTION TO COMPEL CLAIMANTS' ATTORNEYS TO SUBMIT THE DISCLOSURES REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**<br><br>Date: August 13, 2008<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court, 255 East Temple Street, Courtroom 1475, Los Angeles, CA<br>Judge: Honorable Sheri Bluebond |

[1] The Debtors are Thorpe Insulation Company, a California corporation, 5608 Bayshore Walk, Long Beach, CA 90803, Fed. Tax I.D. No. 95-1559386 (Main Debtor), and Pacific Insulation Company, a California corporation, 2741 South Yates Ave., Los Angeles, CA 90040, Fed. Tax I.D. No. 95-4812741.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1
BACKGROUND .......... 3
A. Thorpe's proposed voting procedures purport to allow claimants' lawyers to vote for the plan without any specific type of written authorization .......... 3
B. Snyder Miller has extensive ties to the same set of claimants' lawyers involved here .......... 4
C. Snyder Miller's and Morgan Lewis's contingency fee structure motivates them to ally with claimants' counsel. .......... 5
ARGUMENT .......... 5
POINT I RULE 2019 REQUIRES ANY ATTORNEY WHO REPRESENTS MORE THAN ONE CLIENT TO SUPPLY, AMONG OTHER THINGS, THE IDENTITY OF EVERY CLIENT HE OR SHE REPRESENTS. .......... 5
A. Rule 2019's requirements are both straightforward and mandatory. .......... 5
B. Rule 2019, which has an "extremely broad" scope, is a disclosure provision designed to ensure that all matters in a Chapter 11 reorganization process are done openly and subject to scrutiny. .......... 6
C. Courts have applied Rule 2019 in mass asbestos bankruptcies. .......... 7
D. It is particularly important here to disclose the facts and circumstances of claimants' counsels' respective representations. .......... 9
POINT II THIS COURT SHOULD ORDER CLAIMANTS' COUNSEL TO COMPLY WITH RULE 2019 OR, IN THE ALTERNATIVE, BAR THEM FROM PARTICIPATING IN THE BANKRUPTCY .......... 10
CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page**

## CASES

*CF Holdings Corp.*,
145 B.R. 124 (Bankr. D. Conn. 1992) .......... 7, 10

*In re Baldwin United Corp.*,
52 B.R. 146 (Bankr. S.D. Ohio 1985) .......... 12

*In re Baron & Budd*,
321 B.R. 147 (D. N.J. 2005) .......... 8

*In re Congoleum Corp.*,
No. 03-51524 (Bankr. D.N.J. Dec. 30, 2004) .......... 3, 8, 9, 12

*In re Elec. Theatre Rests. Corp.*,
57 B.R. 147 (Bankr. N.D. Ohio 1986) .......... 7, 10

*In re J.T. Thorpe*,
No. LA02-14216-BB (Bankr. C.D. Cal.) .......... passim

*In re Keene Corp.*,
205 B.R. 690 (Bankr. S.D.N.Y. 1997) .......... 10

*In re Mid-Valley, Inc.*,
Case No. 03-35592 (Bankr. W.D. Pa. April 13, 2004) .......... 11-12

*In re Pittsburgh Corning Corp.*,
Case No. 00-22876 (Bankr. W.D. Pa. August 27, 2004) .......... 8, 9

*In re Semel*,
411 F.2d 195 (3d Cir.1969) .......... 8

*In re Vestra Indus., Inc.*,
82 B.R. 21 (Bankr. D. S.C. 1987) .......... 10

*In the Matter of F&C Int'l, Inc.*,
1994 Bankr. LEXIS 274 (Bankr. S.D. Ohio Feb. 18, 1994) .......... 7

*Kaiser Aluminum Corp.*,
327 B.R. 554 (D. Del. 2005) .......... 8

*Leiman v. Guttman*,
336 U.S. 1 (1949) .......... 7

*Nantucket Investors II v. California Federal Bank (In re Palms Associates)*,
61 F.3d 197 (3d Cir. 1995) .......... 6

*Oklahoma P.A.C.*,
122 B.R. 387 (Bankr. D. Ariz. 1990) .......... 6-7, 10, 12

*Reid v. White Motor Corp.*,
886 F.2d 1462 (6th Cir. 1989) .......... 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES**

28 U.S.C. §1746 .......... 3
Bankruptcy Code's Section 1109(b) .......... 12
Federal Rule of Bankruptcy Procedure 2019 .......... passim
Federal Rule of Bankruptcy Procedure 2019(a) .......... 1, 6
Federal Rule of Bankruptcy Procedure 2019(a)(3) .......... 6
Federal Rule of Bankruptcy Procedure 2019(a)(4) .......... 6

**OTHER AUTHORITIES**

William Douglas, *Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees: Part I: Strategy and Techniques of Protective and Reorganization Committees* (1937) .......... 1, 2, 7, 9
Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 Conn. L. Rev. 913 (1994) .......... 7
NORTON BANKRUPTCY LAW & PRACTICE 2D §27:21 (2003) .......... 12
NORTON BANKRUPTCY RULES 164, Editors' Comment to Rule 2019(b) (2003-04 ed.) .......... 11

The Insurers identified on the signature block below move for an order (i) compelling all claimants' attorneys to submit the disclosure required by Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019" or "the Rule") or, alternatively, (ii) barring non-complying claimants' counsel from participating in the bankruptcy.[2]

**PRELIMINARY STATEMENT**

Thorpe has proposed Voting Procedures that would allow lawyers to cast ballots purportedly on behalf of their clients based on nothing more than those lawyers' certifications that they have authority to do so. If Thorpe were to have its way, then the basis for such alleged authorization would simply be the lawyer's word that he or she has a "contingency fee agreement, written retainer agreement, written engagement agreement, written power of attorney and/or ***other type of written authorization***."[3] And the lawyer casting the ballot would not even have to submit the actual authority-granting document.

Allowing lawyers to participate in the bankruptcy—let alone to cast ballots to support a plan of reorganization—based on some undefined "other type" of authorization violates Rule 2019(a)'s disclosure requirements. Both the language of Rule 2019 and cases interpreting it make clear that the Rule's disclosure requirements are mandatory. Every lawyer "representing more than one creditor . . . ***shall file*** a verified statement" identifying (1) the creditor he or she represents; (2) the nature and amount of the claim; and (3) the pertinent facts and circumstances in connection with the employment. Fed. R. Bankr. P. 2019(a).

The principle that Rule 2019 seeks to vindicate goes to the integrity of the bankruptcy process. As then-future Supreme Court Justice William Douglas (speaking for an SEC committee in 1937) observed, the Rule is designed to ensure that "the inside group" does not manipulate a pre-petition committee to "secure a dominant position in the reorganization" and capture "the emoluments of control." Douglas Report at 876-77.[4] Where, as here, the "non-disclosure" of

---

[2] Insurers incorporate by reference the July 9, 2008, Objection to Debtors' motion for an Order (i) Establishing Procedures for Solicitation and Voting on a Joint Plan of Reorganization; (ii) Approving Forms of Ballots; (iii) Approving Form and Scope of Notice; (iv) Establishing a Record Date for Voting Purposes Only; and (v) Setting Procedures and Deadlines for Confirmation Objections and Voting.

[3] Thorpe has attached the Proposed Voting Procedures as Exhibit A to its Solicitation Motion (the "Voting Procedures") at IV.c.ii.1 (p. 10).

[4] *See Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and*

Rule 2019 information could affect the solicitation and voting methods, Justice Douglas cautioned that it "must be controlled, so that [stakeholders] may be assured of an honest and complete portrayal of all material facts." Douglas Report at 898.

Keeping in mind Justice Douglas's insights, Rule 2019 disclosures are particularly important here for at least three reasons. ***First***, Snyder Miller & Orton, LLP ("Snyder Miller") has had, and continues to have, co-counsel relationships with Kazan, McClain, Abrams, Lyons & Greenwood, PLC ("Kazan McClain") and other lawyers—such as Brayton Purcell and Levin Simes—representing claimants who are now suing Thorpe.[5] As Snyder Miller explains, it "creates work product" for the claimants it jointly represents with Kazan McClain, which those claimants "are free to use" against any defendants.[6] And Thorpe is a defendant against which the claimants can use Snyder Miller's work product. ***Second***, Snyder Miller and Morgan Lewis & Bockius LLP ("Morgan Lewis") are paid on a contingency basis. That fee arrangement ties those firms' compensation to the amount of insurance money they collect. Therefore, to justify higher fees, they have an incentive not only to concede but to actively advocate that Thorpe has enormous asbestos liabilities, which in turn means a greater payout for the claimants and their lawyers. ***Third***, the same claimants' counsel who are drafting the plan, and, in particular, the Trust Distribution Procedures ("TDPs") under which claims will be liquidated will benefit from whatever increased recoveries Snyder Miller and Morgan Lewis obtain.[7]

The court in *Congoleum*—which resembles this case in many important ways—addressed a very similar master ballot proposal that would have allowed lawyers to certify that they have authority to vote. The court held that "a certification in the master ballots doesn't really solve the [Rule 2019] problem" and therefore "a bankruptcy specific power-of-attorney," as opposed to a

*Reorganization Committees: Part I: Strategy and Techniques of Protective and Reorganization Committees* (1937) ("Douglas Report").

[5] *See* James Miller's November 6, 2007 Decl. in Support of Snyder Miller's Employment and Retention ("First Miller Decl.") at ¶11; First Miller Decl., Ex. B at 3 (Dkt. Nos. 285, 111).

[6] James Miller's December 11, 2007 Decl. in Reply to Insurer Opp'n to Retention of Snyder Miller ("Second Miller Decl.") at ¶7, 8, 10 (Dkt. No. 285); *see also infra* Point IV.

[7] *See* Timothy Caballero's July 9, 2008 Declaration ("Caballero Decl."), Ex. 12, Richard Esterkin's June 9, 2008 deposition transcript ("Esterkin First Dep.) at 36:12-23; 140:1-10; Caballero Decl., Ex. 13, Charles Malaret's June 12, 2008 deposition transcript ("Malaret Third Dep.) at 62:24-63:3; 143:5-144:3.

pre-petition power of attorney, "is something that must be strictly complied with here." *In re Congoleum Corp*., No. 03-51524 (Bankr. D.N.J. Dec. 30, 2004), Hr'g Tr., Dkt. No. 1861 at 57. At a minimum, then, the claimants' counsel who wish to cast ballots for their clients must first make the basic disclosures that Rule 2019 mandates.

## BACKGROUND

### A. Thorpe's proposed voting procedures purport to allow claimants' lawyers to vote for the plan without any specific type of written authorization.

Thorpe has proposed Voting Procedures that would allow asbestos injury claimants' attorneys to vote for (or against) the plan of reorganization through so-called "Master Ballots."[8] The proposed Voting Procedures do not require the attorneys casting Master Ballots to demonstrate that they have actual authority to vote on behalf of their alleged clients or even that they represent such persons. Instead, Thorpe proposes that the vote-casting attorneys be allowed to self-certify that they have authority to vote on behalf of the claimants, and the authority on which they are permitted to rely under the Voting Procedures could include powers of attorney or other authorizations given pre-petition.

Specifically, Thorpe proposes that the Master Ballot allow the attorneys to certify as follows:

> The Master Ballot will contain ***certifications***, which shall be under penalty of perjury pursuant to 28 U.S.C. §1746, ***to be completed by the attorney preparing and signing the Master Ballot*** pursuant to which such attorneys will certify that . . . (ii) he has the authority under applicable bankruptcy or non-bankruptcy law to cast a Ballot on the Plan on behalf of the holders of each of the Asbestos Injury Claims listed on the Exhibit to the Master Ballot and the basis of such authorization is a written contingency fee agreement, written retainer agreement, written engagement agreement, written power of attorney and/***or other type of written authorization***, which if such authorization is pursuant to an "other type" of document, the title of such documents must be set forth.[9]

While Thorpe repeats this self-certification procedure in its brief in support of the solicitation and voting procedures, nowhere does Thorpe state that the lawyer must submit the

---

[8] Voting Procedures at IV.c.ii.1 (p. 10).
[9] *Id*.

actual document granting the attorney authority to vote.[10] As a result, the Court and the parties would have nothing other than the lawyers' say so.

**B. Snyder Miller has extensive ties to the same set of claimants' lawyers involved here.**

As the insurers have pointed out elsewhere, the connections between Snyder Miller and many of the asbestos plaintiffs' lawyers suing Thorpe run deep.[11] Snyder Miller works with many of the same lawyers suing Thorpe now, and who are the same lawyers "likely to be involved with the Asbestos Creditor's Committee ***in this case***."[12] The chart below illustrates a pattern of the same lawyers working on a string of asbestos-related bankruptcies:

| INTERLOCKING RELATIONSHIPS AMONG SNYDER MILLER AND THE OTHER LAWYERS HERE, INCLUDING PLAINTIFFS' COUNSEL | | | | | |
|---|---|---|---|---|---|
| | **Snyder Miller** | **Brayton Purcell** | **Kazan McClain** | **Morgan Lewis** | **Renfrew** |
| *Western Macarthur* | ✓ | ✓ | ✓ | ✓ | ✓ |
| *J.T. Thorpe* | ✓ | ✓ | ✓ | ✓ | ✓ |
| *Flintkote* | ✓ | ✓ | ✓ | x | x |
| *Thorpe* | ✓ | ✓ | ✓ | ✓ | ✓ |

These lawyers have made filings in court to support each other's "substantial contribution claims"[13] that were paid on top of plaintiffs' contingency fees.[14] For example, Brayton Purcell and Kazan McClain ***each*** received $2.5 million "substantial contribution claim" payments in the *J.T. Thorpe* bankruptcy (in addition to their contingency fees), which were supported by Morgan Lewis and Charles Renfrew (whom Thorpe put forward as the future claimants' representative here).[15] When it came time to approve Snyder Miller's fees, the plaintiffs' lawyers made no

---

[10] Thorpe's brief in support of the solicitation and voting procedures at 6.

[11] *See* Opposition to Debtor's and Debtor's-in-Possession Application for Order Authorizing Employment of Morgan, Lewis & Bockius LLP as Special Insurance Counsel and for Assumption of Pre-Petition Retention Agreement; Opposition to Application of Debtor and Debtor-in-Possession Thorpe Insulation Company to Employ Snyder Miller & Orton LLP as Special Litigation Counsel (Dkt. Nos. 208, 217); *see also* Caballero Decl., Ex. 14, James Miller's June 6, 2008 deposition transcript ("Miller First Dep.") at 15:5-11; 24:25-26:12; 49:10-50:20; 122:8-123:8; 139:17-140:10.

[12] First Miller Decl., Ex. B at 3 (emphasis added).

[13] *See In re J.T. Thorpe*, No. LA02-14216-BB (Bankr. C.D. Cal.) (Bluebond, J.).

[14] Morgan Lewis Reply in Support of Retention App., at 26 (Morgan Lewis's Michael Horton "filed a declaration in the J.T. Thorpe bankruptcy case supporting this Court's award of a 'substantial contribution claim to Brayton Purcell and Kazan McClain"); Snyder Miller Reply in Support of Retention App., at 9 (In J.T. Thorpe "Mr. Snyder . . . filed a declaration under oath in support of a substantial contribution claim by Kazan McClain and Brayton Purcell"); *see also* Objections to Morgan Lewis Employment App. at 8 fn.19 (Dkt. Nos. 292, 284, 207).

[15] *See* Morgan Lewis Reply in Support of Retention App. at 26 (the Court "awarded the 'substantial contribution

objections—a strange circumstance, since those substantial fee awards reduce plaintiffs' recoveries.

### C. Snyder Miller's and Morgan Lewis's contingency fee structure motivates them to ally with claimants' counsel.

As the Insurers demonstrated in their opposition to Snyder Miller's and Morgan Lewis's retentions, those firms' contingency fee arrangements motivate them to maximize the value of the underlying asbestos claims against Thorpe.[16] By inflating the asbestos claims overall value, Thorpe's special counsel can bootstrap for themselves a justification to increase the insurance coverage. This, in turn, expands the base from which to calculate the two firms' contingency fees. To justify both higher insurance recoveries and fees for themselves, Snyder Miller and Morgan Lewis have now argued that Thorpe has enormous asbestos liabilities.[17] In doing so, they are aligning themselves with the claimants—against the bankruptcy estate's interests.

The self-certifying claimants' lawyers who will cast Master Ballots in this case obviously benefit from this alliance. Needless to say, the docket reflects that none of the many claimant firms with which Snyder Miller and Morgan Lewis often work have made any of the Rule 2019 discloses. Indeed, it does not appear that ***any*** claimants' counsel have made the required disclosures.

## ARGUMENT

## POINT I

### RULE 2019 REQUIRES ANY ATTORNEY WHO REPRESENTS MORE THAN ONE CLIENT TO SUPPLY, AMONG OTHER THINGS, THE IDENTITY OF EVERY CLIENT HE OR SHE REPRESENTS.

### A. Rule 2019's requirements are both straightforward and mandatory.

The straightforward wording of Rule 2019 requires any attorney in a Chapter 11 case who represents more than one creditor to make the following disclosures:

---

claim' sought by [Brayton Purcell and Kazan McClain]"); *see also* Objections to Morgan Lewis Employment App. at 8 fn.20 (Dkt. Nos. 292, 207).

[16] *See* Opposition to Debtor's and Debtor's-in-Possession Application for Order Authorizing Employment of Morgan, Lewis & Bockius LLP as Special Insurance Counsel and for Assumption of Pre-Petition Retention Agreement; Opposition to Application of Debtor and Debtor-in-Possession Thorpe Insulation Company to Employ Snyder Miller & Orton LLP as Special Litigation Counsel (Dkt. Nos. 208, 217)

[17] *See* Snyder Miller Reply in Support of Retention App. at 23-24; and Morgan Lewis Reply in Support of Retention App. at 27 (Dkt. Nos. 284, 292).

> (a) Data Required. In a . . . chapter 11 reorganization case . . . every entity . . . representing more than one creditor . . . ***shall file*** a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof . . . ; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity . . .

Fed. R. Bankr. P. 2019(a) (emphasis added). The Rule further requires that the attorney's "statement shall include a copy of the instrument" empowering him or her to act on behalf of the client. *Id*. Members of a committee—such as the asbestos creditors' committee here—have additional mandatory reporting requirements, including (i) the names of the entities at whose request, directly or indirectly, the committee was organized and (ii) the claims in which a member of the committee has an interest. Fed. R. Bankr. P. 2019(a)(3) and (4).

The requirements of Rule 2019(a) are mandatory, as it uses the word "shall," rather than "may," to command compliance. *Nantucket Investors II v. California Federal Bank (In re Palms Associates)*, 61 F.3d 197, 208 (3d Cir. 1995) (use of the term "shall" imposes a requirement of mandatory, as opposed to discretionary, compliance); *In re The Muralo Company Inc.*, 295 B.R. 512, 524 & n.10 (Bankr. D.N.J. 2003) ("Rule 2019(a) requires entities, including counsel, who would represent in a chapter 11 case more than one creditor, to file a verified statement listing those creditors and "explaining the circumstances of their agency") (quotations and citations omitted).

### B. Rule 2019, which has an "extremely broad" scope, is a disclosure provision designed to ensure that all matters in a Chapter 11 reorganization process are done openly and subject to scrutiny.

Courts have interpreted the scope of Rule 2019 to be "on its face . . . extremely broad." *In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990). In addition to ensuring that lawyers have authority to speak for certain claimants, Rule 2019 seeks to accomplish the following:

> ***Bankruptcy Rule 2019 is a disclosure provision***, which must necessarily be enforced as any other disclosure provision concerning attorneys or professionals, such as Bankruptcy Rules 2014 and 2016. Moreover, the ***Court should also play a role in ensuring that lawyers adhere to certain ethical standards. Bankruptcy Rule 2019 was designed for such a purpose. It is part of the Chapter 11 reorganization process that all matters should be done openly and subject to scrutiny***, whether it is the proposal of a plan of reorganization, representation of the debtor, or representation of numerous creditors—secured or unsecured.

*Oklahoma P.A.C.*, 122 B.R. 387, 392-393 (emphasis added); *see also In the Matter of F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274, *8 (Bankr. S.D. Ohio Feb. 18, 1994) (absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled"); *see also In re Elec. Theatre Rests. Corp.*, 57 B.R. 147, 148-49 (Bankr. N.D. Ohio 1986) (Rule 2019 requires that every person purporting to represent more than one creditor file a verified statement).

As one court put it, Rule 2019 "is designed to foster the goal of reorganization plans which deal fairly with creditors and ***which are arrived at openly***." *Muralo*, 295 B.R. at 524 (emphasis added). Another Court has similarly held that the "purpose of Rule 2019 is to further the Bankruptcy Code's goal of ***complete disclosure during the business reorganization process***" and to ensure that "entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent," are subject to the "control of the court." *In re CF Holdings Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (emphasis added). Rule 2019 is the Bankruptcy Code's mechanism for keeping tabs on multiple representation of creditors and equity security holders and is the only current, specific means of keeping a check on creditors' attorneys' conflicts. *See* Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913, 939-40 (1994).

These sentiments can be traced back to the views of then-future Supreme Court Justice William Douglas, who, speaking for an SEC committee in 1937, noted that Rule 2019 is designed to ensure that "the inside group" does not manipulate a pre-petition committee to "secure a dominant position in the reorganization" and capture "the emoluments of control." Douglas Report at 876-77; *see also Leiman v. Guttman*, 336 U.S. 1, 6-7 (1949). Where, as here, the "non-disclosure" of Rule 2019 information affects the solicitation and voting methods, Justice Douglas cautioned that it "must be controlled, so that [stakeholders] may be assured of an honest and complete portrayal of all material facts." Douglas Report at 898.

### C. Courts have applied Rule 2019 in mass asbestos bankruptcies.

In *Congoleum*, addressing issues similar to those here—namely, allowing lawyers who do not comply with Rule 2019 to cast master ballots—the court held that "a certification in the

master ballots doesn't really solve the problem" and therefore "a bankruptcy specific power-of-attorney," as opposed to a pre-petition power of attorney, "is something that must be strictly complied with here." *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. Dec. 30, 2004), Hr'g Tr., Dkt. No. 1861 at 57.

The *Congoleum* court emphasized the need to avoid conflicts of interest and to protect the integrity of the bankruptcy process. *In re Baron & Budd*, 321 B.R. at 168 (internal citations and quotations omitted). Relying on Third Circuit authority, the Court held that "in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship." *In re Baron & Budd*, 321 B.R. at 168 (quoting *In re Semel*, 411 F.2d 195, 197 (3d Cir.1969)). Such information is "critical" to the administration of a bankruptcy. *In re Baron & Budd*, 321 B.R. at 168.

Also instructive are *Pittsburgh Corning*,[18] *Owens Corning*,[19] and *Kaiser Aluminum*,[20] which involved thousands of claimants alleging asbestos-related bodily injury, who were represented by a handful of powerful plaintiffs' law firms. The same bankruptcy judge in all three cases entered identical orders calling for attorneys representing multiple claimants to produce certain identifying information about their clients, including their names, addresses, social security numbers, dates of acquisition of the claims, types of disease, and the pertinent facts and circumstances in connection with the lawyer's employment. Indeed, in ordering compliance, the bankruptcy judge made the following statement about the mandatory nature of Rule 2019:

> ***[E]verybody who contends that they represent a creditor in the case and represents more than one, must comply with this rule. Period, end of story***. People have asked for this rule, the rule is there, ***it's mandatory***, I've done some research, I can't see any case that has said that it isn't mandatory, therefore, I'm simply—I've entered it in all of the cases, it's going to be my rule of thumb from now on, I am sorry, it's onerous, I think it's onerous, I don't know why Congress

---

[18] Order Requiring Filing of Statements Pursuant to Fed. R Bankr. P. 2019 in *In re Pittsburgh Corning Corp.*, Case. No. 00-22876, Dkt. No. 3527 (Bankr. W.D. Pa. Aug. 26, 2004).

[19] Amendatory Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019 in *In re Owens Corning*, Case No. 00-3837, Dkt. No. 12563 (Bankr. D. Del. Aug. 30, 2004).

[20] *Kaiser Aluminum Corp.*, 327 B.R. 554, 557 (D. Del. 2005).

> made it this onerous, Congress did it, not me. I'm going to do what Congress told me to do. So, that's just the way it is.[21]

This language is consistent with the case law leading up to and including the *Congoleum* decisions.[22]

**D. It is particularly important here to disclose the facts and circumstances of claimants' counsels' respective representations.**

Justice Douglas's concern that an "inside group" could manipulate a pre-petition committee to "secure a dominant position in the reorganization" and capture "the emoluments of control" is particularly pressing here. Douglas Report at 876-77. ***First***, no one denies that claimants' counsel recommended Morgan Lewis and Snyder Miller to Thorpe.[23] The plaintiffs' lawyers also approved Morgan Lewis's and Snyder Miller's contingency scheme with Thorpe, thereby determining how much their adversary's lawyers would be paid.[24] In turn, Morgan Lewis's retainer letter confirms that it and Snyder Miller entered into an agreement to collaborate with claimants' counsel and share information that is premised on Thorpe purportedly having a common interest with the very claimants who are suing Thorpe for hundreds of millions of dollars.[25]

***Second***, there is a long-standing series of business and co-counsel relations between Snyder Miller and various claimants' counsel who will cast ballots in connection with the plan of reorganization here.[26] Some of those claimants' lawyers have current co-counsel or other business relationships with Snyder Miller. Those lawyers include Brayton Purcell, Kazan McClain, and others.[27]

---

[21] *In re Pittsburgh Corning Corp.*, Case No. 00-22876 (Bankr. W.D. Pa. August 27, 2004), Hr'g Tr. at 22 (emphasis added).

[22] *Id*.

[23] Hr'g Tr. Dec. 19, 2007 Proceeding, 37:15-20; Emergency Motion for Continuance, Memo of Points and Authorities, at 1-2 (Dkt. Nos. 369, 314).

[24] Hr'g Tr. Dec. 19, 2007 Proceeding, 22:11-14, 45:18-46:6 (Dkt. No. 369).

[25] Ex. A to Morgan Lewis Retention Order, at 8-9 (Dkt. No. 412).

[26] *See* Caballero Decl. Ex. 14, Miller First Dep. at 15:5-20; 20:12-15; 23:3-22; 25:13-17: 35-25:39-10; Caballero Decl., Ex. 15, Stephen Snyder's December 18, 2007 deposition transcript ("Snyder First Dep.") at 141:5-19; 150:10-151:7.

[27] There have been well-publicized incidents involving false filings by the same claimants' counsel involved here, including by Brayton Purcell, which an Ohio judge barred from appearing in his court after finding that the firm engaged in dishonest behavior. *See* Caballero Decl. at ¶¶ 2-12.

***Third***, discovery recently conducted pursuant to the District Court's Remand Order[28] has revealed that claimants' counsel are deeply involved in drafting the plan, and, in particular, the TDPs under which claims will be liquidated.[29] Sitting on the other side of the table during the negotiation and drafting sessions are Morgan Lewis and Snyder Miller attorneys—whom claimants' counsel selected and whose compensation they approved.[30] Indeed, the claimants' lawyers were involved in the pre-packaged bankruptcy that Thorpe was planning in 2005.[31]

## POINT II

### THIS COURT SHOULD ORDER CLAIMANTS' COUNSEL TO COMPLY WITH RULE 2019 OR, IN THE ALTERNATIVE, BAR THEM FROM PARTICIPATING IN THE BANKRUPTCY.

Because Rule 2019 is both mandatory and integral to the progress of a fair and open bankruptcy proceeding, courts routinely and rigorously enforce compliance by imposing the penalties authorized under Rule 2019(b). *See, e.g.*, *Oklahoma P.A.C.*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990) ("If there is a failure to comply with the disclosure provisions of Bankruptcy Rule 2019, the Court may, *inter alia*, refuse to permit the entity acting on behalf of the parties from being heard further in a Chapter 11 case."); *CF Holdings*, 145 B.R. at 127 (requiring supplemental filing); *In re Vestra Indus., Inc.*, 82 B.R. 21, 22 (Bankr. D. S.C. 1987) (disallowing claims filed *en masse* by union for failure to comply with Rule 2019 unless defects were cured within sixty days); *In re Electronic Theatre Restaurants Corp.*, 57 B.R. 147, 149 (Bankr. N.D. Ohio 1986) (upholding a claim objection because the entity filing the claim had not shown that it was authorized to act on behalf of claimants); *In re Keene Corp.*, 205 B.R. 690, 704 (Bankr. S.D.N.Y. 1997) (sanctions appropriate in connection with a finding of failure to comply with Rule 2019).

Rule 2019(b) specifically provides that this Court may impose the following remedies for failure to supply the information required under subsection (a):

---

[28] The Remand Order is entered at Docket No. 97 in *In Re Thorpe Insulation Co.*, CV 08-00246 DSF (C.D. Cal.).

[29] *See* Caballero Decl., Ex. 12, Esterkin First Dep. at 36:12-23; 140:1-10; Caballero Decl., Ex. 13, Malaret Third Dep. at 62:24-63:3; 143:5-144:3.

[30] *See* Caballero Decl., Ex. 16, Charles Malaret's December 17, 2007 deposition transcript ("Malaret First Dep.") at 30:4-34:1; Caballero Decl., Ex. 13, Malaret Third Dep. at 33:6-24; 34:24-35:24.

[31] *See* Caballero Decl. Ex. 17 (documents related to Thorpe's contemplated pre-packaged bankruptcy).

> the court may (1) determine whether there has been a failure to comply with the provisions of subdivision (a) of this rule . . . and, if it so determines, the court may refuse to permit that entity . . . to be heard further or to intervene in the case; (2) examine any representation provision . . . or other authorization . . . and grant appropriate relief; and (3) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity . . . who has not complied with this rule.

For the claimants counsel to comply with the unambiguous requirements of Rule 2019, the Court should order them to supply the following information:

- Under subsection (1) ("the name and address of the creditor or equity security holder"), claimants' counsel must provide a list of their clients, including both claimants and law firms for whom they have acted (or been involved with) as co-counsel or joint counsel.
- Under subsection (2) ("the nature and amount of the claim or interest and the time of acquisition thereof"), claimants' counsel must supply reasonably detailed information about each claimant's alleged exposure to asbestos, the alleged disease or injury, and the specific amount claimed.
- Under subsection (3) ("a recital of the pertinent facts and circumstances in connection with the employment of the entity"), claimants' counsel must provide information about which claimants or law firms retained them and the basis of their compensation, including any evidence of informed consent by any affected claimant.

The lack of transparency regarding the scope, facts and circumstances of multiple representations and how they affect this bankruptcy's plan formulation, claim classification, allowance and distribution, and claimant voting require this Court's intervention to preserve the integrity of a public and open bankruptcy process.

Alternatively, the Court should bar non-complying claimants' counsel from participating in the bankruptcy. The Court has the authority to bar claimants' counsel from participating in this bankruptcy (on behalf of any clients) unless they comply with their Rule 2019 obligations. *See* NORTON BANKRUPTCY RULES 164, Editors' Comment to Rule 2019(b) (2003-04 ed.) (under Rule 2019(b) Court may impose "such corrective orders as may appear to be appropriate"). Other courts have also cautioned against counting the votes of any claimants affected by non-compliance with Rule 2019. *In re Mid-Valley, Inc.*, Case No. 03-35592 (Bankr. W.D. Pa. April 13, 2004), Hr'g Tr., Dkt. No. 1186 at 87-88) ("if there isn't a 2019 statement of record, the votes will not be counted. . . . And by the time we get to the plan confirmation hearing, if they're not of record, their claims will not be counted"); *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J.

Dec. 30, 2004), Hr'g Tr., Dkt. No. 1861 at 37. The "[f]ailure to comply [with Rule 2019] may result in inability to be heard in the case, and invalidity of reorganization plan ballots or other documents filed on behalf of the creditors by the attorney." NORTON BANKRUPTCY LAW & PRACTICE 2D §27:21 (2003) (citing Rule 2019(b); *Oklahoma P.A.C.*, 122 B.R. 387; *Reid v. White Motor Corp*., 886 F.2d 1462 (6th Cir. 1989)).

For example, in *Reid*, the Sixth Circuit affirmed a bankruptcy court's refusal to allow a class proof of claim filed by an attorney who did not submit a Rule 2019 statement and thus failed to "elucidate his authority as agent" for the creditors whom he purportedly represented. *Reid v. White Motor Corp*., 886 F.2d 1462, 1471 (6th Cir. 1989); *see also In re Baldwin United Corp*., 52 B.R. 146, 148 (Bankr. S.D. Ohio 1985) (holding that failure to comply with Rule 2019 is cause for denial of class proof of claim). The Sixth Circuit rejected the non-complying attorney's argument that he was authorized as agent for the creditors to file a class proof of claim because he represented them in underlying state court litigation, noting that consent to one piece of litigation is "not tantamount to a blanket consent to any litigation the class counsel may wish to pursue." *Reid*, 886 F.2d at 1471-02.

Similarly, in *Oklahoma P.A.C.*, the bankruptcy court did not allow a lawyer to represent both junior and senior lien creditors secured by the same asset in a lift-stay adversary proceeding because the lawyer could not vigorously represent the interests of both parties. *Oklahoma P.A.C.*, 122 B. R. at 392. The bankruptcy court dismissed the attorney's contention that Rule 2019 abridged the creditor's rights to be heard in contravention of the Bankruptcy Code's Section 1109(b). *Id*. at 393.

These concerns are especially relevant here given the connections between Snyder Miller and many of the asbestos plaintiffs' lawyers. Unless claimants' counsel submit their Rule 2019 disclosures forthwith, the Court should bar them from participating in the bankruptcy and, in particular, from casting ballots in connection with the plan of reorganization.

**CONCLUSION**

This Court should order claimants' counsel to comply with their mandatory obligations under Rule 2019(a) to ensure that the reorganization plan is arrived at openly, deals fairly with

creditors, and is consistent with case law. Alternatively, the Court should bar attorneys who fail to comply with Rule 2019 from participating in the bankruptcy.

Dated: July 9, 2008

O'MELVENY & MYERS LLP

By: /s/ Abby Schwartz
RICHARD B. GOETZ
ABBY SCHWARTZ
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

TANCRED V. SCHIAVONI
GARY SVIRSKY
Times Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

ALAN S. BERMAN
BERMAN & AIWASIAN
725 South Figueroa Street, Suite 1050
Los Angeles California 90017
Telephone: (213) 833-3200
Facsimile: (213) 833-3230

*Attorneys for Motor Vehicle Casualty Company, Central National Insurance Company of Omaha, and Century Indemnity Company, successor to Cigna Specialty Insurance Company f/k/a California Union Insurance Company*

SIMPSON THACHER & BARTLETT LLP

By: /s/ Deborah Stein
BARRY R. OSTRAGER
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

SETH A. RIBNER
DEBORAH L. STEIN
ROBERT J. PFISTER
1999 Avenue of the Stars, 29th Floor
Los Angeles, California 90067
Telephone: (310) 407-7500
Facsimile: (310) 407-7502

*Attorneys for Employers Reinsurance Corporation and Westport Insurance Company*

SEYFARTH SHAW LLP

By: /s/ David M. Wiseblood
DAVID M. WISEBLOOD
560 Mission Street
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8594

DAVID C. CHRISTIAN
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603
Telephone: (312) 460-5883
Facsimile: (312) 460-7833

GRIPPO & ELDEN LLC
TODD C. JACOBS (*pro hac vice*)
111 South Wacker
Chicago, IL 60606
Telephone: (312) 704-7700

*Attorneys for National Fire Insurance Company of Hartford, as successor by merger to Transcontinental Insurance Company, and Continental Insurance Company, as successor to certain policies issued by Harbor Insurance Company*

CROWELL & MORING LLP
By: /s/ Steven P. Rice

Steven P. Rice (State Bar No. 94321)
Queena Hu (State Bar No. 238925)
3 Park Plaza, 20th Floor
Irvine, California 92614-8505
Telephone: (949) 263-8400
Facsimile: (949) 263-8414

Mark D. Plevin (State Bar No. 146278)
Cynthia Kendrick (admitted *pro hac vice*)
Leslie A. Davis (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

*Attorneys for Chicago Insurance Company and Fireman's Fund Insurance Company*

ADELMAN & GETTLEMAN, LTD

By: /s/ Brad A. Berish
BRAD A. BERISH (*pro hac vice*)
bberish@ag-ltd.com
NATHAN Q. RUGG (*pro hac vice*)
nrugg@ag-ltd.com
53 W. Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Telephone: (312) 435-1050
Facsimile: (312) 435-1059

TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
LINDA BONDI MORRISON (SBN 210264)
lmorrison@tsmp.com
KATHERINE K. LINER (SBN 143679)
kliner@tsmp.com
ADAM C. HACKETT (SBN 220679)
3070 Bristol Street, Suite 450
Costa Mesa, California 92626
Telephone: (714) 429-2900
Facsimile: (714) 429-2901

*Attorneys for Allstate Insurance Company, solely as successor-in-interest to Northbrook Excess & Surplus Insurance Company, formerly known as Northbrook Insurance Company*