Jeremy V. Richards (CA Bar No. 102300)
Malhar S. Pagay (CA Bar No. 189289)
Scotta E. McFarland (CA Bar No. 165391)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

Attorneys for Thorpe Insulation Company, Debtor and Debtor in Possession

John A Lapinski (CA Bar No. 71596)
Leslie R. Horowitz (CA Bar No. 97630)
Stephen E. Hyam (CA Bar No. 198065)
CLARK & TREVITHICK
800 Wilshire Blvd, Twelfth Floor
Los Angeles, California 90017
Telephone: (213) 629 5700
Facsimile: (213) 624-9441

Attorneys for Pacific Insulation Company, Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>THORPE INSULATION COMPANY,[1]<br><br>Debtor. | Case No.: 2:07-19271-BB<br><br>Chapter 11<br>(Jointly Administered with Case No. 2:07-20016-BB)<br><br>**NOTICE OF MOTION AND MOTION OF DEBTORS FOR ORDER APPROVING: (1) INSURANCE SETTLEMENT WITH TRANSPORT INSURANCE COMPANY AND TRANSPORT INDEMNITY COMPANY; (2) SALE OF INSURANCE POLICIES FREE AND CLEAR OF CLAIMS AND INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT W. FULTS**<br><br>[Declaration of Brian M. LaJoie filed concurrently herewith]<br><br>Date:    December 17, 2009<br>Time:    10:00 a.m.<br>Place:   United States Bankruptcy Court<br>            255 East Temple Street, Courtroom 1475<br>            Los Angeles, CA 90012<br>Judge:   Honorable Sheri Bluebond |

---

[1] The Debtors are Thorpe Insulation Company, a California corporation, 5608 Bayshore Walk, Long Beach, CA 90803, Fed. Tax I.D. No. 95-1559386 (Main Debtor) and Pacific Insulation Company, a California corporation, 2741 South Yates Ave., Los Angeles, CA. 90040, Fed. Tax I.D. No. 95-4812741.

DB2/21279701.2
84264-002\DOCS_LA:211343.3

1

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; COUNSEL TO THE FUTURE CLAIMANTS' REPRESENTATIVE; COUNSEL FOR KNOWN PERSONAL INJURY ASBESTOS CLAIMANTS; COUNSEL FOR TRANSPORT INSURANCE COMPANY AND TRANSPORT INDEMNITY COMPANY; THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2002:**

**PLEASE TAKE NOTICE** that on **December 17, 2009, at 10:00 a.m.**, before the Honorable Sheri Bluebond, United States Bankruptcy Judge, in Courtroom 1475 at 255 E. Temple Street, Los Angeles, California , Thorpe Insulation Company ("Thorpe") and Pacific Insulation Company ("Pacific" and, together with Thorpe, the "Debtors"), the above-captioned debtors and debtors in possession, will and do hereby move for entry of an order approving the Settlement Agreement, Buy Back of Insurance Policies and Rights, and Full and Mutual Releases of Claims and Covenant not to Sue executed as of November 17, 2009 (the "Settlement Agreement"), a copy of which is attached as Exhibit "A" to the appended Declaration of Robert W. Fults, between Debtors, Farwest Insulation Contracting ("Farwest"), Bayshore Partners, LLC ("Bayshore"), Robert W. and Debra Fults, Linda E. Fults, Eric W. and Vicky Fults, and David A. and Stacie Fults (collectively, the "Fults Family", and together with Debtors, Farwest, and Bayshore, the "TBFP Parties"), on the one hand, and Transport Insurance Company and Transport Indemnity Company (collectively "Transport"), on the other hand, which (1) settles all controversies between the TBFP Parties and Transport through the effective date of the Settlement Agreement; and (2) sells to Transport (i) the "Subject Insurance Policies" (as defined in the Settlement Agreement); (ii) any right to or interest in insurance coverage proceeds relating to the Subject Insurance Policies; and (iii) any "Claims" (as defined in the Settlement Agreement) relating to the Subject Insurance Policies (collectively, (i), (ii), and (iii) are referred to herein as the "Insurance Rights"), free and clear of all rights, liens, claims and interests.[2]

The Motion is brought pursuant to section 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and is based on this Notice of Motion and Motion,

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given them in the Settlement Agreement.

the supporting Memorandum of Points and Authorities, the attached Declaration Robert W. Fults, the Declarations of Brian M. LaJoie and of Charles B. Renfrew filed concurrently herewith, the record in these cases, and all matters of which this Court may properly take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f) requires that any objection or response to the Motion be filed with the Court and served upon undersigned counsel for the Debtors at least fourteen (14) days prior to the hearing date. Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve a written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order granting this Motion, and (1) approving the compromise set forth in the Settlement Agreement in its entirety pursuant to Bankruptcy Rule 9019; (2) approving the sale to Transport of the Insurance Rights, free and clear of all rights, liens, claims and interests, pursuant to Bankruptcy Code § 363(b), (f) and (m); (3) deeming Transport a good faith purchaser within the meaning of Bankruptcy Code § 363(m); (4) authorizing the Debtors to perform their respective obligations under the Settlement Agreement; (5) directing the Parties to perform their respective obligations pursuant to the Settlement Agreement; (6) binding the Debtors' estates, any trustee that might be appointed and any trust that may be established pursuant to Bankruptcy Code § 524(g) to the terms and conditions of the Settlement Agreement; (7) making such findings of fact and conclusions of law that are consistent with the foregoing; and (8) granting such other and further relief as the Court deems just and proper.

84264-002\DOCS_LA:211343.1
DB2/21279701.2
84264-002\DOCS_LA:211343.3

3

Dated: November 23, 2009

PACHULSKI STANG ZIEHL & JONES LLP

By: /s/ *Jeremy V. Richards*
Jeremy V. Richards
Scotta E. McFarland
Attorneys for Thorpe Insulation Company,
Debtor and Debtor in Possession

CLARK & TREVITHICK

By: _____
John A. Lapinski
Leslie R. Horowitz
Stephen E. Hyam
Attorneys for Pacific Insulation Company,
Debtor and Debtor in Possession

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF FACTS .....................................................................................................3

    A.   The Debtors' Business History ........................................................................................3

    B.   The Asbestos-Related Claims ..........................................................................................4

    C.   Insurance ..........................................................................................................................4
          1.   Policies .....................................................................................................................4
          2.   The Coverage Litigation ..........................................................................................5

    D.   The Bankruptcy Cases .....................................................................................................5

    E.   The Transport Policy and Coverage Position .................................................................7

III. DISCUSSION ........................................................................................................................7

    A.   Approval of the Settlement is Appropriate .....................................................................7
          1.   Probability of Success in the Litigation ..................................................................9
          2.   Likely Difficulties in Collection ..............................................................................9
          3.   Complexity of the Litigation and Related Expense, Inconvenience and Delay to be Encountered in Collection ..........................................................................................9
          4.   The Interests of Creditors .......................................................................................10
          5.   No Prejudice to Non-Parties ..................................................................................10

    B.   Sale of the Policies Pursuant to Sections 363(b) and (f) and (m) is Appropriate ..............11

IV. CONCLUSION ....................................................................................................................12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DB2/21279701.2
84264-002\DOCS_LA:211343.3

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re A&C Properties*
784 F.2d 1377 (9th Cir. 1986) ........................................................................................... 8

*In re Blair*
538 F.2d 849 (9th Cir. 1976) ............................................................................................. 9

*In re Channel One Communications*
117 B.R. 493 (E.D. Mo. 1990) ........................................................................................ 12

*In re Genesis Health Ventures, Inc.*
266 B.R. 591 (Bankr. D. Del. 2001) ................................................................................. 8

*In re Louise's Inc.*
211 B.R. 798 (D. Del. 1997) ............................................................................................. 8

*In re Martin*
91 F. 3d 389 (3d Cir. 1996) ............................................................................................... 8

*In re Minoco Group of Companies*
799 F.2d 517 (9th Cir. 1986) .......................................................................................... 11

*In re Moore*
110 B.R. 924 (Bankr. C.D. Cal. 1990) ........................................................................... 11

*In re Teltronics Services, Inc.*
762 F.2d 185 (2d Cir. 1985) ............................................................................................. 8

*Paulman v. Gateway Venture Partners III, L.P. (In re FiltTransportorp, Inc.)*
163 F.3d 570 (9th Cir. 1998) .......................................................................................... 12

*Walter v. Sunwest Bank (In re Walter)*
83 B.R. 14 (9th Cir. BAP 1988) ..................................................................................... 11

**Statutes**
11 U.S.C. § 105(a) ............................................................................................................ 7
11 U.S.C. § 363(b) .................................................................................................... 11, 12
11 U.S.C. § 363(f) .................................................................................................... 11, 12
11 U.S.C. § 363(f)(2) ...................................................................................................... 11
11 U.S.C. § 363(f)(5) ...................................................................................................... 11
11 U.S.C. §363(m) .......................................................................................................... 12
11 U.S.C. § 524(g) .......................................................................................................... 13
Fed. R. Bankr. P. 9019(a) ................................................................................................. 7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Thorpe Insulation Company ("Thorpe") and Pacific Insulation Company ("Pacific" and together with Thorpe, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases, have been involved in coverage litigation for over two years with over twenty insurers that issued comprehensive liability policies to Thorpe, regarding available coverage for asbestos bodily injury claims arising from Thorpe's business activities. Throughout this time, certain of Thorpe's insurers have steadfastly denied that any coverage exists for the Debtors' asbestos liabilities and have threatened to seek reimbursement of millions of dollars in defense costs pursuant to the terms of their policies. This motion asks the Court to approve the Settlement Agreement, Buy Back of Insurance Policies and Rights, and Full and Mutual Releases of Claims and Covenant Not to Sue (the "Settlement Agreement")[3] that settles the claims between Debtors, Farwest Insulation Contracting ("Farwest"), Bayshore Partners, LLC ("Bayshore"), Robert W. and Debra Fults, Linda E. Fults, Eric W. and Vicky Fults, and David A. and Stacie Fults (collectively, the "Fults Family", and together with Debtors, Farwest and Bayshore, the "TBFP Parties"), on the one hand, and Transport Insurance Company and Transport Indemnity Company (collectively "Transport"), on the other hand, that, among other things, will provide additional funds with which the Debtors will fund a plan of reorganization in their bankruptcy cases.

The Settlement Agreement, executed as of November 17, 2009 (Exhibit "A" to the appended Declaration of Robert W. Fults)[4] provides, among other things, (i) mutual releases and covenants not to sue between the parties, including releases by Thorpe of any claims that it may have relating to the subject insurance policies against Transport and (ii) for the purchase by Transport of the insurance policies issued by Transport to any of the TBFP parties and rights related thereto, free and clear of claims and interests, pursuant to 11 U.S.C. §363(b), (f) and (m). The Settlement Agreement

---

[3] Capitalized terms not otherwise defined herein shall have the meaning given them in the Settlement Agreement.
[4] The description of the Settlement Agreement in this motion is qualified in its entirety by the terms of the Settlement Agreement. In the event of any inconsistency between the terms of the Settlement Agreement and the description of those terms in this motion, the terms of the Settlement Agreement shall control.

84264-002\DOCS_LA:211343.3                                    1

also requires that, (i) on the fifth business day following the first day the order approving the Settlement Agreement (the "Approval Order") is entered by the Bankruptcy Court and is not subject to a stay, Transport will pay Thorpe[5] or the Thorpe Trust, if then established, an initial payment of $2.5 million and (ii) on the fifth business day following the first day the order of the District Court confirming a plan of reorganization or affirming an order of the Bankruptcy Court confirming the Plan that provides Transport with protection pursuant to Bankruptcy Code section 524(g) (the "Confirmation Order") has been entered and is not stayed, Transport shall pay to Thorpe or the Thorpe Trust, if then established, an final payment of $2.75 million in cash. In no event is either of these payments refundable to Transport.

In the event that the releases provided in Section 4 of the Settlement Agreement do not become effective notwithstanding Transport's payment of the initial payment, the $2.5 million will be applied to payments for "Products Liability", as defined in the Transport policy. It shall be counted against the $2.5 million "Products Liability" aggregate limit for judgments in favor of TBFP Parties or the Thorpe Trust in the Coverage Litigation (discussed below), any judgment against Transport in a Direct Action Claim, any claims paid by the Thorpe Trust or any combination of the three. When the credit has been applied in full as set forth, Transport's liability under the insurance policy issued to Thorpe for "Products Liability" will be deemed fully extinguished forever.[6]

In the exercise of their business judgment, the Debtors believe that the Settlement Agreement is reasonable, fair and in the best interests of their estates and their creditors. The Settlement Agreement is supported by the Committee and Future Claimants' Representative in the Debtors' bankruptcy cases. Accordingly, the Debtors request that the Court approve the Settlement Agreement, including, *inter alia*, the sale of the Insurance Rights to Transport free and clear of all rights, liens, claims and interests and deeming Transport a good faith buyer.

---

[5] Thorpe will deposit any payment it receives into a qualified settlement fund and may use the funds in any manner approved by the Bankruptcy Court. If the Bankruptcy Court does not approve a use of the funds, they will become property of the Thorpe Trust and used as the Plan provides.

[6] The provision in the Settlement Agreement relating to the discussed credits is Section 4.6.

84264-002\DOCS_LA:211343.3                2

## II.

## STATEMENT OF FACTS[7]

### A. The Debtors' Business History

Thorpe, formerly known as Plant Insulation Company, was incorporated in California on April 10, 1948. Thorpe was a union subcontractor whose primary business was to install and repair insulation on mechanical systems at commercial and industrial sites, such as industrial and petrochemical plants, commercial office buildings, hotels, prisons, major public works projects, power generation plants, cryogenic and refrigeration plants and marine installations. At one time, Thorpe was the largest independent mechanical insulation contractor in the western United States. In addition to construction services, Thorpe provided insulation design and engineering assistance, budget estimating, proposal preparation and value engineering and scheduling services to its customers.

Between 1948 and 1992, Thorpe also was a distributor for insulation products. Between 1957 and 2000 Thorpe was the distributor for Johns-Manville products in Southern California. Before approximately 1972, the insulation material distributed and installed by Thorpe contained asbestos. After approximately 1972, Thorpe ceased distributing and installing insulation, containing asbestos, but continued to be involved in operations involving asbestos and lead abatement, including "ripping out" or repairing insulation that contained asbestos at commercial and industrial sites.

Pacific was incorporated in California by Thorpe on May 23, 2000 as a wholly owned subsidiary of Thorpe. Following Pacific's incorporation, Thorpe transferred its insulation distribution business to Pacific. Pacific is the southwest's leading commercial and industrial insulation distributor/fabricator, with locations in Southern California, Northern California, Arizona and Nevada. Pacific has never installed or sold any materials containing asbestos.

On or about December 17, 2004, Thorpe's then remaining assets were sold at a foreclosure sale to Farwest.[8] Following the foreclosure, Thorpe ceased operation of its business.

---

[7] The general background presented below, and the facts specific to this settlement, are set forth in the appended Declaration of Robert W. Fults ["Fults Declaration"].

[8] Farwest is also a party to many of the asbestos personal injury lawsuits.

84264-002\DOCS_LA:211343.3         3

B. **The Asbestos-Related Claims**

For the past thirty years, Thorpe has been embroiled in asbestos related litigation. To date it has been subjected to approximately 12,000 claims and lawsuits for personal injuries or wrongful death alleged to have been caused in whole or in part by exposure to asbestos-containing materials installed or supplied by Thorpe and one claim for alleged property damage for asbestos in buildings. Thorpe anticipates that numerous additional asbestos personal injury claims will be asserted against it for many years to come. The potential liabilities represented by present and anticipated future asbestos personal injury claims against Thorpe far exceed the value of Thorpe's undisputed assets, which include the right to receive distributions from an asbestos trust that was established by Johns-Manville. Thorpe, however, believes that its historical comprehensive general insurance assets provide substantial coverage for these present and future liabilities.

Pacific, although it has never distributed any asbestos products, has been named in many of the asbestos lawsuits filed against Thorpe based upon the allegation that it is a successor in interest to Thorpe. It also anticipates that it will continue to be named as a defendant in such lawsuits filed against Thorpe. Pacific denies it is responsible for any liabilities asserted in the lawsuits and has previously made written demand to Thorpe and its insurers that they indemnify it for all asbestos related claims asserted against it. In order to control the costs of defending the numerous lawsuits filed against it, Pacific negotiated a "Stand Still" agreement with law firms representing the vast majority of plaintiffs in the asbestos personal injury lawsuits. That agreement provides that those lawsuits would be stayed pending the determination of the scope of Thorpe's existing insurance coverage and that any statutes of limitation applicable to claims that were not the subject of existing suits against Pacific be tolled.

C. **Insurance**

1. Policies

Thorpe purchased comprehensive general liability insurance from various insurers for the period May 1948 to October 1984. The policies provide "occurrence" based coverage that is triggered when injury happens during the policy period, regardless of when a claim is made. In California, these policies covered asbestos bodily injury lawsuits on a "continuous trigger" basis –

i.e., each policy in effect from first exposure to asbestos through manifestation of disease or death is responsive to a particular claim.

These standard policies provide two basic forms of coverage for the asbestos claims: (i) bodily injury claims caused by asbestos exposure after a product is relinquished or an operation is completed ("Product Claims") and (ii) bodily injury claims caused by asbestos exposure before a product is relinquished or an operation is completed ("Operations Claims"). Product Claims are subject to aggregate limits. Operations Claims are not subject to aggregate limits.

In tendering the asbestos suits to the insurers, Thorpe requested that various insurers provide defense and indemnity coverage, as provided in the applicable insurance policies. From 1978, certain of Thorpe's insurers have handled the asbestos suits through their appointed counsel and controlled the defense and settlement of the asbestos suits.

2.  The Coverage Litigation

In 2005, when certain insurers asserted that coverage for the asbestos lawsuits was exhausted or approaching exhaustion, Thorpe promptly filed an action seeking to determine coverage rights and obligations for present and future asbestos personal injury claims in the California Superior Court for the County of San Francisco, captioned *Thorpe Insulation Company v. Allstate Insurance Company, et al.* (No. CGC-05-446 682). Certain insurers also commenced actions in the California Superior Court for the County of Los Angeles to seek an adjudication of their rights under their policies with Thorpe, entitled *Chicago Insurance Company, et al. v. Allstate Insurance Company, et al.* (No. BC343014) and *Chicago Insurance Company v. Pacific Insulation Company, et al.* (No. BC346667). The actions have been coordinated under the proceeding entitled *In re Thorpe Asbestos Coverage Cases* (Judicial Council Proceeding No. 4458) (collectively, the "Coverage Litigation").

D.  **The Bankruptcy Cases**

On October 15, 2007, Thorpe commenced the instant bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to Bankruptcy Code sections 1107(a) and 1108, Thorpe is managing its affairs as a debtor in possession. An Official Committee of Unsecured Creditors was appointed on October 26, 2007. A representative of future asbestos claims (the "Future Claimants' Representative") was appointed in Thorpe's bankruptcy case on

December 21, 2007.

Pacific filed its chapter 11 case on October 31, 2007, due to its alleged asbestos liability and the failure of Thorpe's insurers to pay asbestos claims asserted against Thorpe. Pursuant to Bankruptcy Code sections 1107(a) and 1108, Pacific is managing its affairs as a debtor in possession. An Official Committee of Unsecured Creditors was appointed in Pacific's bankruptcy case on November 16, 2007. T Future Claimants' Representative was appointed in Pacific's bankruptcy case on December 21, 2007.

One of the principal goals of Thorpe and Pacific in these chapter 11 cases is to obtain confirmation of a plan of reorganization that establishes a channeling injunction. Pursuant to that channeling injunction, all current and future asbestos-related personal injury and wrongful death claims will be discharged and channeled to a trust for liquidation and payment pursuant to Bankruptcy Code section 524(g). It will also offers protection under section 524(g) to various non-debtor parties, including insurers who elect to resolve their coverage disputes with Thorpe prior to the confirmation of that plan.

Toward that end, on May 28, 2008, the Debtors, along with their co-proponents the Official Committee of Unsecured Creditors and the Future Claimants' Representative (collectively, the "Proponents"), filed their *First Amended Joint Plan of Reorganization of Thorpe Insulation Company and Pacific Insulation Company* (the "Plan") dated July 24, 2008 and the *First Amended Disclosure Statement Concerning the First Amended Joint Plan of Reorganization of Thorpe Insulation Company and Pacific Insulation Company Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement). On August 12, 2008, the Court entered an order approving the Disclosure Statement. The creditors voted to accept the Plan and a hearing on confirmation commenced on January 8, 2009. In response to certain interim rulings, modifications were incorporated into a Second Amended Plan, filed on February 9, 2009, and the Third Amended Plan, filed on April 13, 2009. A Supplemental Disclosure Statement describing certain of the modifications to the Original Plan was submitted and approved by order entered on April 23, 2009. On October 12, 2009, the Proponents filed the Fourth Amended Plan. A hearing on confirmation of the Fourth Amended Plan is currently scheduled for December 17, 2009.

### E. The Transport Policy and Coverage Position

The Transport policy with which the Settlement Agreement specifically deals is an upper level excess liability policy No. TEL 9000112 that was allegedly issued by Transport to Thorpe for the period October 1, 1976 to October 1, 1977 (the "Policy"). Transport is a defendant and cross-defendant in the Coverage Litigation. Like other insurers, Transport has denied, and continues to deny, that it has any duty to defend or indemnify the asbestos bodily injury claims. To this end, Transport filed answers in the coverage litigation asserting a total of forty-five (45) affirmative defenses. Transport vigorously defended the coverage litigation and their coverage position, including filing a cross-complaint against Thorpe for declaratory relief and a motion for summary judgment on a policy interpretation issue, prior to Thorpe's bankruptcy.

Although the Debtors believe that their position in the Coverage Litigation is meritorious, there is no certainty that the Debtors will prevail in their litigation against Transport or, even if the Debtors largely prevail, that the result of the litigation would be more favorable to the Debtors than the proposed settlement. Equally importantly, even were the Debtors to wholly prevail in their litigation with Transport, that victory would not occur for many years. The proposed settlement will provide additional funds to confirm a plan of reorganization in these bankruptcy cases now, allowing the Debtors to provide at least some immediate payment (upon confirmation of a plan) to the asbestos claimants, many of whom are aged and desperately ill.

## III.

## DISCUSSION

### A. Approval of the Settlement is Appropriate

Bankruptcy Rule 9019(a) provides, in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The Debtors believe that the Settlement Agreement is in the best interest of the estates and should be approved. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.

> The purpose of a compromise agreement is to allow the Debtor and the creditor to avoid the expense and burdens associated with litigating sharply contested and dubious claims. [Citations omitted] The law favors compromise and not litigation for its own sake [citations omitted] . . . [O]n review, we must determine whether the settlement entered into by the Debtor was reasonable, given the particular circumstances of the case. [Citations omitted].

*In re A&C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

The standards by which courts evaluate a proposed compromise and settlement are well established. In bankruptcy, a court should approve a proposed compromise and settlement if it is fair and equitable and in the best interests of the debtor's estate and its creditors. *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 620 (Bankr. D. Del. 2001).

In determining whether a settlement is within the range of reasonableness, the Court should consider four principal factors:

(1) the probability of success in the litigation;

(2) the likely difficulties in collection;

(3) the complexity of the litigation and related expense, inconvenience and delay; and

(4) the interests of the creditors.

*In re A&C Properties*, 784 F.2d at 1381; *In re Martin*, 91 F. 3d at 393 (citing *Anderson*, 390 U.S. at 424). These factors seek to balance the probable benefit and potential cost of litigating a claim or defense against the benefits of the proposed settlement.

Moreover, under the well-established standard for consideration of the merits of a settlement, a settlement should be approved unless it "fall[s] below the lowest point in the range of reasonableness." *In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). A court is "not to decide the numerous questions of law and fact raised by [an objecting party], but rather to canvass

the issues to determine whether the settlement falls within the lowest range of reasonableness, and should therefore be approved." *Id.* A court need not conduct a "mini-trial" to make that determination. *In re Blair,* 538 F.2d 849 (9th Cir. 1976).

As set forth below, approval of the Settlement Agreement is in the best interest of the estates because it results in a fair and equitable compromise after consideration of the aforementioned factors.

### 1. Probability of Success in the Litigation

The Debtors submit the probability of success in any litigation to determine Transport's obligations has been duly accounted for in the Settlement Agreement. While the Debtors' investigation of the potential claims against Transport led them to believe that their position in the Coverage Litigation is meritorious, Transport will vigorously contest the available limits under the Policy. Indeed, prior to Thorpe's bankruptcy, Transport filed a cross-complaint against Thorpe for declaratory relief and a motion for summary judgment relating to the number of policy limits available under its policy for Thorpe's asbestos claims. The motion was pending at the time of Thorpe's bankruptcy. In addition to the motion for summary judgment, Transport asserted forty-five (45) affirmative defenses coverage in the Coverage Litigation. Absent settlement, the Debtors will be forced to expend substantial monies and face the inherent risks and delay in litigating these issues.

Although the Debtors dispute Transport's contentions and its motion for summary judgment, if Transport prevails upon any of its arguments, the Debtors' potential recovery would be substantially reduced, including a risk it might recover nothing. [Fults Declaration, ¶ 25].

### 2. Likely Difficulties in Collection

Transport is in run-off and, as such has limited financial resources. Debtors concluded that even if they litigated and prevailed against Transport, there could be a risk in collecting the full value of any judgment. Accordingly, this was one factor in Debtor's judgment in settling with Transport.

### 3. Complexity of the Litigation and Related Expense, Inconvenience and Delay to be Encountered in Collection

As indicated by the foregoing discussion, the legal and factual issues involved in the

Debtors' dispute with Transport are complex. Those disputes concern the interpretation of complex insurance policies and other alleged agreements. [Fults Declaration, ¶ 26]. The Debtors anticipate that, absent approval of the Settlement Agreement, the litigation with Transport would consume many years, requiring numerous trial phases and extensive appellate proceedings following the entry of any judgment by the trial court. [Fults Declaration, ¶ 26]

The Debtors also anticipate that further litigation will result in the Debtors becoming liable for substantial litigation expenses. While the Debtors have retained contingency counsel to prosecute their coverage claims, the Debtors remain liable for all litigation expenses incurred in the Coverage Litigation. In light of the issues to be litigated and the number of depositions and expert witnesses that will be required to prepare for trial, absent approval of the Settlement Agreement, those expenses would be substantial. [Fults Declaration, ¶ 26].

### 4. The Interests of Creditors

The interests of creditors strongly militate in favor of approval of the Settlement Agreement, as evidenced by the fact that each of the Creditors' Committees and the Future Claimants' Representative support approval of the Settlement Agreement. The Settlement Agreement provides significant dollars in the near term that will help fund the Plan and that will enable the Thorpe Trust to be established to make immediate payments to Thorpe's asbestos creditors, many of whom are ill and/or aged. Further settlement avoids the risks, delays and costs associated with further litigation with Transport. Accordingly, the interest of creditors also favors approval of the Settlement Agreement. [Fults Declaration, ¶ 28].

### 5. No Prejudice to Non-Parties

The interests of third parties who are not beneficiaries of the Settlement Agreement are also protected. Asbestos claimants who, without the approval of the Settlement Agreement, might have asserted claims against or rights in the Subject Insurance Policies will instead be paid from the proceeds of the settlement, through the establishment of the Thorpe Trust under the Plan. The non-settling insurers' rights are not affected by the settlement as the Settlement Agreement does not purport to release any claims by Thorpe's non-settling insurers or to affect any right of contribution, indemnity or subrogation that Thorpe's non-settling insurers may have against Transport.

**B.    Sale of the Policies Pursuant to Sections 363(b) and (f) and (m) is Appropriate**

Section 4.1.2 of the Settlement Agreement provides for the buyback by Transport of the Insurance Rights, which includes any right to or interest in insurance coverage or proceeds relating to the Subject Insurance Policies, and any Claims relating to the Subject Insurance Policies that would arise under any theory of law, admiralty or equity, statutory or otherwise, free and clear of claims and interests. The Court may authorize such relief under section 363(b) of the Bankruptcy Code, which permits a debtor to sell property of the estate, other than in the ordinary course of business, upon notice and a hearing. 11 U.S.C. § 363(b). Insurance policies are property of a debtor's estate. *In re Minoco Group of Companies*, 799 F.2d 517, 519 (9th Cir. 1986).[9] Sales of estate property are generally approved where a debtor can demonstrate "some articulated business justification for using, selling, or leasing property outside the ordinary course of business. . . ." *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (9th Cir. BAP 1988).[10] A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference. *In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990). For the reasons noted above, it is the Debtors' business judgment that the sale of the Insurance Rights to Transport would benefit the Debtors' estates and their creditors.

The Insurance Rights may be transferred free and clear of any claims or interests of any entity. A debtor may sell property of the estate, free and clear of any interest of an entity in such property, if the entity consents. 11 U.S.C. § 363(f)(2). In addition, property may be sold free and clear of interests of an entity if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5).

The only entities that might assert a claim against or an interest in the Insurance Rights have consented, or should be deemed to have consented, to the sale, or could be compelled to accept a money satisfaction of such claim or interest. The Committee and Future Claimants' Representative

---

[9] *See also First Fidelity Bank v. McAteer*, 985 F. 2d 114, 116 (3d Cir. 1993) ("This Court has held that insurance policies are property of the estate...."); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir.) ("Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."), cert. denied, 488 U.S. 868 (1988); *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986) (same).

[10] *See also In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

support approval of the Settlement Agreement, and to the extent a claimant or other entity receives notice and does not file a written objection to this Motion, such claimant or other entity should be deemed to have consented to the transaction. Local Bankruptcy Rule 9013-1(1)(k); *In re Channel One Communications*, 117 B.R. 493 (E.D. Mo. 1990). Furthermore, any entity seeking recovery against the Subject Insurance Policies could be compelled to accept a money satisfaction of such interest. Thus, a sale free and clear of claims and interests is appropriate because both sections 363(f)(2) and (f)(5) are satisfied.

Transport is a good faith buyer entitled to the protections afforded by section 363(m).

> A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (citing *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "Lack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

*Paulman v. Gateway Venture Partners III, L.P. (In re FiltTransportorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998). Although the settlement agreement speaks for itself, the parties also confirm that there was no fraud or collusion with respect the negotiations leading up to the settlement, and the Debtors and Transport negotiated the terms of the Settlement Agreement in good faith and at arms-length. [Fults Declaration, ¶¶ 29-30; LaJoie Declaration, ¶¶ 2-5. Accordingly, Transport should be deemed entitled to the protections afforded a good faith purchaser under 11 U.S.C. § 363(m), which is a condition of the Settlement Agreement.

## IV.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter an order granting this Motion, and (1) approving the compromise set forth in the Settlement Agreement in its entirety pursuant to Bankruptcy Rule 9019; (2) approving the sale to Transport of the Insurance Rights, free and clear of claims and interests, pursuant to Bankruptcy Code § 363(b), (f) and (m); (3) deeming Transport a good faith purchaser within the meaning of Bankruptcy Code § 363(m); (4) authorizing the Debtors to perform their respective obligations under the Settlement Agreement; (5)

1  directing the Parties to perform their respective obligation pursuant to the Settlement Agreement; (6)

2  binding the Debtors' estates, any trustee that might be appointed and any trust that may be

3  established pursuant to Bankruptcy Code § 524(g) to the terms and conditions of the Settlement

4  Agreement; (7) making such findings of facts and conclusions of law that are consistent with the

5  foregoing; and (8) granting such other and further relief as the Court deems just and proper.

6  Dated:   November 23, 2009          PACHULSKI STANG ZIEHL & JONES LLP

7
                                       By:     /s/ Jeremy V. Richards
8                                              Jeremy V. Richards
                                               Scotta E. McFarland
9                                              Attorneys for Thorpe Insulation
                                               Company, Debtor and Debtor in Possession
10

11                                     CLARK & TREVITHICK

12                                     By:    [signature]
                                              John M. Lapinski
13                                            Leslie R. Horowitz
                                              Stephen E. Hyam
14                                            Attorneys for Pacific Insulation Company,
                                              Debtor and Debtor in Possession
15

84264-002\DOCS_LA:211343.3                   13