1  Jeremy V. Richards (CA Bar No. 102300)
   Malhar S. Pagay (CA Bar No. 189289)
2  Scotta E. McFarland (CA Bar No. 165391)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 11th Floor
   Los Angeles, California  90067-4100
4  Telephone: 310/277-6910
   Facsimile:  310/201-0760
5
   Attorneys for Thorpe Insulation Company, Debtor and
6  Debtor in Possession

7  John A Lapinski (CA Bar No. 71596)
   Leslie R. Horowitz (CA Bar No. 97630)
8  Stephen E. Hyam (CA Bar No. 198065)
   CLARK & TREVITHICK
9  800 Wilshire Blvd, Twelfth Floor
   Los Angeles, California 90017
10 Telephone: (213) 629 5700
   Facsimile:  (213) 624-9441
11 Attorneys for Pacific Insulation Company,
   Debtor and Debtor in Possession
12
                    **UNITED STATES BANKRUPTCY COURT**
13                   **CENTRAL DISTRICT OF CALIFORNIA**
                         **LOS ANGELES DIVISION**
14
15 In re                              │ Case No.: 2:07-19271-BB
16 THORPE INSULATION COMPANY,[1]      │ Chapter 11
                                      │ (Jointly Administered with Case No. 2:07-20016-BB)
                        Debtor.       │
17                                    │ **NOTICE OF MOTION AND MOTION OF DEBTORS**
                                      │ **FOR ORDER APPROVING: (1) INSURANCE**
18                                    │ **SETTLEMENT WITH MAINE BONDING AND**
                                      │ **CASUALTY COMPANY; (2) SALE OF INSURANCE**
19                                    │ **POLICIES FREE AND CLEAR OF CLAIMS AND**
                                      │ **INTERESTS; MEMORANDUM OF POINTS AND**
20                                    │ **AUTHORITIES; DECLARATION OF ROBERT W.**
                                      │ **FULTS**
21                                    │
                                      │ [Declaration of Robert Koscielniak filed concurrently
22                                    │ herewith]
23                                    │ Date:     December 17, 2009
                                      │ Time:     10:00 a.m.
24                                    │ Place:    United States Bankruptcy Court
                                      │           255 East Temple Street, Courtroom 1475
25                                    │           Los Angeles, CA 90012
                                      │ Judge:    Honorable Sheri Bluebond
26
27 _____
   [1] The Debtors are Thorpe Insulation Company, a California corporation, 5608 Bayshore Walk, Long Beach, CA
28 90803, Fed. Tax I.D. No. 95-1559386 (Main Debtor) and Pacific Insulation Company, a California corporation, 2741
   South Yates Ave., Los Angeles, CA.  90040, Fed. Tax I.D. No. 95-4812741.

*PACHULSKI STANG ZIEHL & JONES LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES, CALIFORNIA*

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; COUNSEL TO THE FUTURE CLAIMANTS' REPRESENTATIVE; COUNSEL FOR KNOWN PERSONAL INJURY ASBESTOS CLAIMANTS; COUNSEL FOR MAINE BONDING AND CASUALTY COMPANY; THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2002:**

**PLEASE TAKE NOTICE** that on **December 17, 2009, at 10:00 a.m.**, before the Honorable Sheri Bluebond, United States Bankruptcy Judge, in Courtroom 1475 at 255 E. Temple Street, Los Angeles, California , Thorpe Insulation Company ("Thorpe") and Pacific Insulation Company ("Pacific" and, together with Thorpe, the "Debtors"), the above-captioned debtors and debtors in possession, will and do hereby move for entry of an order approving the Settlement Agreement, Buy Back of Insurance Policies and Rights, and Full and Mutual Releases of Claims and Covenant not to Sue executed as of November 16, 2009 (the "Settlement Agreement"), a copy of which is attached as Exhibit "A" to the appended Declaration of Robert W. Fults, between Debtors, Farwest Insulation Contracting ("Farwest"), Bayshore Partners, LLC ("Bayshore"), Robert W. and Debra Fults, Linda E. Fults, Eric W. and Vicky Fults, and David A. and Stacie Fults (collectively, the "Fults Family", and together with Debtors, Farwest, and Bayshore, the "TBFP Parties"), on the one hand, and Maine Bonding and Casualty Company ("Maine Bonding"), on the other hand, which (1) settles all controversies between the TBFP Parties and Maine Bonding through the effective date of the Settlement Agreement; and (2) sells to Maine Bonding, for the benefit of the appropriate Zurich Company:  (i) the "Subject Insurance Policies" (as defined in the Settlement Agreement); (ii) any right to or interest in insurance coverage proceeds relating to the Subject Insurance Policies; and (iii) any "Claims" (as defined in the Settlement Agreement) relating to the Subject Insurance Policies (collectively, (i), (ii), and (iii) are referred to herein as the "Insurance Rights"), free and clear of all rights, liens, claims and interests.[2]

The Motion is brought pursuant to section 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and is based on this Notice of Motion and Motion,

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given them in the Settlement Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  the supporting Memorandum of Points and Authorities, the attached Declaration Robert W. Fults,

2  the Declarations of Robert Koscielniak and of Charles B. Renfrew filed concurrently herewith,

3  the record in these cases, and all matters of which this Court may properly take judicial notice.

4  **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f) requires

5  that any objection or response to the Motion be filed with the Court and served upon undersigned

6  counsel for the Debtors at least fourteen (14) days prior to the hearing date.  Pursuant to Local

7  Bankruptcy Rule 9013-1(h), the failure to timely file and serve a written opposition may be

8  deemed by the Court to be consent to the granting of the relief requested in the Motion.

9  **WHEREFORE**, the Debtors respectfully request that the Court enter an order granting

10  this Motion, and (1) approving the compromise set forth in the Settlement Agreement in its

11  entirety pursuant to Bankruptcy Rule 9019; (2) approving the sale to Maine Bonding of the

12  Insurance Rights, free and clear of all rights, liens, claims and interests, pursuant to Bankruptcy

13  Code § 363(b), (f) and (m); (3) deeming Maine Bonding a good faith purchaser within the

14  meaning of Bankruptcy Code § 363(m); (4) authorizing the Debtors to perform their respective

15  obligations under the Settlement Agreement; (5) directing the Parties to perform their respective

16  obligations pursuant to the Settlement Agreement; (6) binding the Debtors' estates, any trustee

17  that might be appointed and any trust that may be established pursuant to Bankruptcy Code §

18  524(g) to the terms and conditions of the Settlement Agreement; (7) making such findings of fact

19  and conclusions of law that are consistent with the foregoing; and (8) granting such other and

20  further relief as the Court deems just and proper.

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dated:    November 25, 2009

PACHULSKI STANG ZIEHL & JONES LLP

By:    /s/ Jeremy V. Richards
       Jeremy V. Richards
       Scotta E. McFarland
       Attorneys for Thorpe Insulation Company,
       Debtor and Debtor in Possession

CLARK & TREVITHICK

By:
       John A. Lapinski
       Leslie R. Horowitz
       Stephen E. Hyam
       Attorneys for Pacific Insulation Company,
       Debtor and Debtor in Possession

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS ......................................................................................3

   A.   The Debtors' Business History ........................................................................3

   B.   The Asbestos-Related Claims..........................................................................4

   C.   Insurance..........................................................................................................5
      1.   Policies...................................................................................................5
      2.   The Coverage Litigation .......................................................................5

   D.   The Bankruptcy Cases .....................................................................................6

   E.   The Maine Bonding Policy and Coverage Position.........................................7

III. DISCUSSION ........................................................................................................8

   A.   Approval of the Settlement is Appropriate .....................................................8

      1.   Probability of Success in the Litigation................................................9

      2.   Likely Difficulties in Collection .........................................................10

      3.   Complexity of the Litigation and Related Expense, Inconvenience and Delay to be Encountered in Collection ............................................10

      4.   The Interests of Creditors ....................................................................10

      5.   No Prejudice to Non-Parties ................................................................11

   B.   Sale of the Policies Pursuant to Sections 363(b) and (f) and (m) is Appropriate...............11

IV. CONCLUSION ......................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A&C Properties*
784 F.2d 1377 (9th Cir. 1986) ....................................................................8, 9

*In re Blair*
538 F.2d 849 (9th Cir. 1976) ..........................................................................9

*In re Channel One Communications*
117 B.R. 493 (E.D. Mo. 1990) ......................................................................12

*In re Genesis Health Ventures, Inc.*
266 B.R. 591 (Bankr. D. Del. 2001) ...............................................................8

*In re Louise's Inc.*
211 B.R. 798 (D. Del. 1997) ...........................................................................8

*In re Martin*
91 F.3d 389 (3d Cir. 1996) .........................................................................8, 9

*In re Minoco Group of Companies*
799 F.2d 517 (9th Cir. 1986) ........................................................................11

*In re Moore*
110 B.R. 924 (Bankr. C.D. Cal. 1990)...........................................................11

*In re Teltronics Services, Inc.*
762 F.2d 185 (2d Cir. 1985) ...........................................................................9

*Paulman v. Gateway Venture Partners III, L.P. (In re FiltMaine Bondingorp, Inc.)*
163 F.3d 570 (9th Cir. 1998) ........................................................................12

*Walter v. Sunwest Bank (In re Walter)*
83 B.R. 14 (9th Cir. BAP 1988) ....................................................................11

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................8
11 U.S.C. § 363(b) ................................................................................2, 11, 13
11 U.S.C. §363(f)........................................................................................2, 13
11 U.S.C. § 363(f)(2) .....................................................................................12
11 U.S.C. § 363(f)(5) .....................................................................................12
11 U.S.C. § 363(m) ...............................................................................2, 13
11 U.S.C. § 524(g) .........................................................................................13
Federal Bankruptcy Rule of Procedure 9019(a) .............................................8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### <u>INTRODUCTION</u>

Thorpe Insulation Company ("Thorpe") and Pacific Insulation Company ("Pacific" and together with Thorpe, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases, have been involved in coverage litigation for over two years with over twenty insurers that issued comprehensive liability policies to Thorpe, regarding available coverage for asbestos bodily injury claims arising from Thorpe's business activities. Throughout this time, certain of Thorpe's insurers have steadfastly denied that any coverage exists for the Debtors' asbestos liabilities and have threatened to seek reimbursement of millions of dollars in defense costs pursuant to the terms of their policies. This motion asks the Court to approve the Settlement Agreement, Buy Back of Insurance Policies and Rights, and Full and Mutual Releases of Claims and Covenant Not to Sue (the "Settlement Agreement")[3] that settles the claims between Debtors, Farwest Insulation Contracting ("Farwest"), Bayshore Partners, LLC ("Bayshore"), Robert W. and Debra Fults, Linda E. Fults, Eric W. and Vicky Fults, and David A. and Stacie Fults (collectively, the "Fults Family", and together with Debtors, Farwest and Bayshore, the "TBFP Parties"), on the one hand, and Maine Bonding and Casualty Company ("Maine Bonding"), on the other hand, that, among other things, will provide additional funds with which the Debtors will fund a plan of reorganization in their bankruptcy cases.

The Settlement Agreement, executed as of November 16, 2009 (Exhibit "A" to the appended Declaration of Robert W. Fults)[4] provides, among other things, (i) mutual releases and covenants not to sue between the parties, including releases by Thorpe of any claims that it may have relating to the Subject Insurance Policies against Maine Bonding and Zurich Companies and (ii) for the purchase by Maine Bonding for the benefit of the appropriate Zurich Company of (x) the "Subject Insurance Policies" (as defined in the Settlement Agreement); (y) any right to or interest in insurance

---

[3] Capitalized terms not otherwise defined herein shall have the meaning given them in the Settlement Agreement.
[4] The description of the Settlement Agreement in this motion is qualified in its entirety by the terms of the Settlement Agreement. In the event of any inconsistency between the terms of the Settlement Agreement and the description of those terms in this motion, the terms of the Settlement Agreement shall control.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    coverage proceeds relating to the Subject Insurance Policies; and (z) any "Claims" (as defined in the

2    Settlement Agreement) relating to the Subject Insurance Policies (collectively, (x), (y), and (z) are

3    referred to herein as the "Insurance Rights"), free and clear of all rights, liens, claims and interests,

4    pursuant to 11 U.S.C. §363(b), (f) and (m).  The Settlement Agreement also requires that Maine

5    Bonding pay to a qualified settlement fund created by Thorpe or, if then in existence, the Thorpe

6    Trust, (i) no later than thirty (30) days after the order approving the Settlement Agreement (the

7    "Approval Order") is entered by the Bankruptcy Court and is not subject to a stay, an initial payment

8    of $6.0 million; (ii) no later than eleven (11) days after the order or orders of the District Court

9    affirming an order of the Bankruptcy Court confirming the Plan that provides the Zurich Companies

10    with protection pursuant to Bankruptcy Code section 524(g) (the "Confirmation Order") has been

11    entered and is not stayed, a second payment of $6.0 million; and (iii) on the earlier of (y) one

12    hundred eighty (180) days after the due date of the second payment or (z) ten (10) days after the

13    Confirmation Order becomes a final order, a final payment of $13.5 million.

14            The Settlement Agreement also contains provisions dealing with the possibilities that the

15    order sought by this motion (the "Approval Order") might be reversed on appeal or that Thorpe may

16    not be successful in obtaining confirmation of a plan of reorganization in these bankruptcy cases.  In

17    the former event, while the Zurich Companies are not entitled to obtain a refund of any monies paid

18    under the terms of the Settlement Agreement, those payments will be credited to any liability that the

19    Zurich Companies may have under the Subject Insurance Policies and the Subject Insurance Policies

20    will be reinstated.  In the event that Thorpe is not successful in obtaining confirmation of a plan of

21    reorganization that provides the Zurich Companies with protection pursuant to Section 524(g),

22    Maine Bonding has an option; it may either:  (a) continue the Settlement Agreement in full force and

23    effect and pay the full settlement consideration of $25.5 million, relying upon the Approval Order

24    and judgment reduction provisions of the Settlement Agreement to protect it against the third party

25    claims that would otherwise be barred by the Permanent Injunctions or (b) terminate the Settlement

26    Agreement and reinstate the Subject Insurance Policies, receiving credit against any liability that it

27    may have under the Subject Insurance Policies for any payments made under the terms of the

28    Settlement Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The Debtors believes that the proposed settlement is reasonable, fair and in the best interests

2    of their estates and their creditors.  The Settlement Agreement is supported by the Official

3    Committee of Unsecured Creditors and Future Claimants' Representative in the Debtors' bankruptcy

4    cases.  Accordingly, the Debtors request that the Court approve the Settlement Agreement,

5    including, *inter alia*, the sale of the Insurance Rights to the appropriate Zurich Companies free and

6    clear of all rights, liens, claims and interests and deeming the appropriate Zurich Companies good

7    faith buyers.

8                                                    **II.**

9                                    **STATEMENT OF FACTS[5]**

10   **A.    The Debtors' Business History**

11   Thorpe, formerly known as Plant Insulation Company, was incorporated in California on

12   April 10, 1948.  Thorpe was a union subcontractor whose primary business was to install and repair

13   insulation on mechanical systems at commercial and industrial sites, such as industrial and

14   petrochemical plants, commercial office buildings, hotels, prisons, major public works projects,

15   power generation plants, cryogenic and refrigeration plants and marine installations.  At one time,

16   Thorpe was the largest independent mechanical insulation contractor in the western United States.

17   In addition to construction services, Thorpe provided insulation design and engineering assistance,

18   budget estimating, proposal preparation and value engineering and scheduling services to its

19   customers.

20   Between 1948 and 1992, Thorpe also was a distributor for insulation products.  Between

21   1957 and 2000 Thorpe was the distributor for Johns-Manville products in Southern California.

22   Before approximately 1972, the insulation material distributed and installed by Thorpe contained

23   asbestos.  After approximately 1972, Thorpe ceased distributing and installing insulation, containing

24   asbestos, but continued to be involved in operations involving asbestos and lead abatement,

25   including "ripping out" or repairing insulation that contained asbestos at commercial and industrial

26   sites.

27

28   ---
[5] The general background presented below, and the facts specific to this settlement, are set forth in the appended
Declaration of Robert W. Fults ["Fults Declaration"].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Pacific was incorporated in California by Thorpe on May 23, 2000 as a wholly owned

2    subsidiary of Thorpe.  Following Pacific's incorporation, Thorpe transferred its insulation

3    distribution business to Pacific.  Pacific is the southwest's leading commercial and industrial

4    insulation distributor/fabricator, with locations in Southern California, Northern California, Arizona

5    and Nevada.  Pacific has never installed or sold any materials containing asbestos.

6    On or about December 17, 2004, Thorpe's then remaining assets were sold at a foreclosure

7    sale to Farwest.[6]  Following the foreclosure, Thorpe ceased operation of its business.

8    **B.    The Asbestos-Related Claims**

9    For the past thirty years, Thorpe has been embroiled in asbestos related litigation.  To date it

10    has been subjected to approximately 12,000 claims and lawsuits for personal injuries or wrongful

11    death alleged to have been caused in whole or in part by exposure to asbestos-containing materials

12    installed or supplied by Thorpe and one claim for alleged property damage for asbestos in buildings.

13    Thorpe anticipates that numerous additional asbestos personal injury claims will be asserted against

14    it for many years to come.  The potential liabilities represented by present and anticipated future

15    asbestos personal injury claims against Thorpe far exceed the value of Thorpe's undisputed assets,

16    which include the right to receive distributions from an asbestos trust that was established by Johns-

17    Manville.  Thorpe, however, believes that its historical comprehensive general insurance assets

18    provide substantial coverage for these present and future liabilities.

19    Pacific, although it has never distributed any asbestos products, has been named in many of

20    the asbestos lawsuits filed against Thorpe based upon the allegation that it is a successor in interest

21    to Thorpe.  It also anticipates that it will continue to be named as a defendant in such lawsuits filed

22    against Thorpe.  Pacific denies it is responsible for any liabilities asserted in the lawsuits and has

23    previously made written demand to Thorpe and its insurers that they indemnify it for all asbestos

24    related claims asserted against it.  In order to control the costs of defending the numerous lawsuits

25    filed against it, Pacific negotiated a "Stand Still" agreement with law firms representing the vast

26    majority of plaintiffs in the asbestos personal injury lawsuits.  That agreement provides that those

27    lawsuits would be stayed pending the determination of the scope of Thorpe's existing insurance

28

---

[6]  Farwest is also a party to many of the asbestos personal injury lawsuits.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   coverage and that any statutes of limitation applicable to claims that were not the subject of existing

2   suits against Pacific be tolled.

3   **C.    Insurance**

4       1.    Policies

5       Thorpe purchased comprehensive general liability insurance from various insurers for the

6   period May 1948 to October 1984.  The policies provide "occurrence" based coverage that is

7   triggered when injury happens during the policy period, regardless of when a claim is made.  In

8   California, these policies covered asbestos bodily injury lawsuits on a "continuous trigger" basis –

9   i.e., each policy in effect from first exposure to asbestos through manifestation of disease or death is

10  responsive to a particular claim.

11      The Debtors' position is that these standard policies provide two basic forms of coverage for

12  the asbestos claims: (i) bodily injury claims caused by asbestos exposure after a product is

13  relinquished or an operation is completed ("Product Claims") and (ii) bodily injury claims caused by

14  asbestos exposure before a product is relinquished or an operation is completed ("Operations

15  Claims").  Product Claims are subject to aggregate limits.  Operations Claims are not subject to

16  aggregate limits.

17      In tendering the asbestos suits to the insurers, Thorpe requested that various insurers provide

18  defense and indemnity coverage, as provided in the applicable insurance policies.  From 1978,

19  certain of Thorpe's insurers have handled the asbestos suits through their appointed counsel and

20  controlled the defense and settlement of the asbestos suits.

21      2.    The Coverage Litigation

22      In 2005, when certain insurers asserted that coverage for the asbestos lawsuits was exhausted

23  or approaching exhaustion, Thorpe promptly filed an action seeking to determine coverage rights

24  and obligations for present and future asbestos personal injury claims in the California Superior

25  Court for the County of San Francisco, captioned *Thorpe Insulation Company v. Allstate Insurance*

26  *Company, et al.* (No. CGC-05-446 682).  Certain insurers also commenced actions in the California

27  Superior Court for the County of Los Angeles to seek an adjudication of their rights under their

28  policies with Thorpe, entitled *Chicago Insurance Company, et al. v. Allstate Insurance Company, et*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    *al*. (No. BC343014) and *Chicago Insurance Company v. Pacific Insulation Company, et al*. (No.

2    BC346667).  The actions have been coordinated under the proceeding entitled *In re Thorpe Asbestos*

3    *Coverage Cases* (Judicial Council Proceeding No. 4458) (collectively, the "Coverage Litigation").

4    **D.      The Bankruptcy Cases**

5           On October 15, 2007, Thorpe commenced the instant bankruptcy case by filing a voluntary

6    petition for relief under chapter 11 of the Bankruptcy Code.  Pursuant to Bankruptcy Code sections

7    1107(a) and 1108, Thorpe is managing its affairs as a debtor in possession.  An Official Committee

8    of Unsecured Creditors was appointed on October 26, 2007.  A representative of future asbestos

9    claims (the "Future Claimants' Representative") was appointed in Thorpe's bankruptcy case on

10   December 21, 2007.

11          Pacific filed its chapter 11 case on October 31, 2007, due to its alleged asbestos liability and

12   the failure of Thorpe's insurers to pay asbestos claims asserted against Thorpe.  Pursuant to

13   Bankruptcy Code sections 1107(a) and 1108, Pacific is managing its affairs as a debtor in

14   possession.  An Official Committee of Unsecured Creditors was appointed in Pacific's bankruptcy

15   case on November 16, 2007.  The Future Claimants' Representative was appointed in Pacific's

16   bankruptcy case on December 21, 2007.

17          One of the principal goals of Thorpe and Pacific in these chapter 11 cases is to obtain

18   confirmation of a plan of reorganization that establishes a channeling injunction.  Pursuant to that

19   channeling injunction, all current and future asbestos-related personal injury and wrongful death

20   claims will be discharged and channeled to a trust for liquidation and payment pursuant to

21   Bankruptcy Code section 524(g).  It will also offers protection under section 524(g) to various non-

22   debtor parties, including insurers who elect to resolve their coverage disputes with Thorpe prior to

23   the confirmation of that plan.

24          Toward that end, on May 28, 2008, the Debtors, along with their co-proponents the Official

25   Committee of Unsecured Creditors and the Future Claimants' Representative (collectively, the

26   "Proponents"), filed their *First Amended Joint Plan of Reorganization of Thorpe Insulation*

27   *Company and Pacific Insulation Company* (the "Plan") dated July 24, 2008 and the *First Amended*

28   *Disclosure Statement Concerning the First Amended Joint Plan of Reorganization of Thorpe*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   *Insulation Company and Pacific Insulation Company Under Chapter 11 of the Bankruptcy Code* (the

2   "Disclosure Statement).  On August 12, 2008, the Court entered an order approving the Disclosure

3   Statement.  The creditors voted to accept the Plan and a hearing on confirmation commenced on

4   January 8, 2009.  In response to certain interim rulings, modifications were incorporated into a

5   Second Amended Plan, filed on February 9, 2009, and the Third Amended Plan, filed on April 13,

6   2009.  A Supplemental Disclosure Statement describing certain of the modifications to the Original

7   Plan was submitted and approved by order entered on April 23, 2009.  On October 12, 2009, the

8   Proponents filed the Fourth Amended Plan.  A hearing on confirmation of the Fourth Amended Plan

9   is currently scheduled for December 17, 2009.

10   **E.    The Maine Bonding Policy and Coverage Position**

11          The Maine Bonding policy with which the Settlement Agreement specifically deals is policy

12   No. VW 001212 that was allegedly issued by Maine Bonding to Thorpe for the period October 1,

13   1974 to October 1, 1975 (the "Policy").  Maine Bonding is a defendant and cross-defendant in the

14   Coverage Litigation.  Like other insurers, Maine Bonding has denied, and continues to deny, that it

15   has any duty to defend or indemnify the asbestos bodily injury claims.  To this end, Maine Bonding

16   filed an answer in the coverage litigation asserting a total of forty-five (45) affirmative defenses.

17   Also, Maine Bonding filed a cross-complaint against Thorpe seeking declaratory relief.  Prior to

18   Thorpe filing for bankruptcy, Maine Bonding joined in a summary judgment motion against Thorpe.

19   Maine Bonding vigorously defended the coverage litigation and its coverage position prior to

20   Thorpe's bankruptcy.

21          Although the Debtors believe that their position in the Coverage Litigation is meritorious,

22   there is no certainty that the Debtors will prevail in their litigation against Maine Bonding or, even if

23   the Debtors largely prevail, that the result of the litigation would be more favorable to the Debtors

24   than the proposed settlement.  Equally importantly, even were the Debtors to wholly prevail in their

25   litigation with Maine Bonding, that victory would not occur for many years.  The proposed

26   settlement will provide additional funds to confirm a plan of reorganization in these bankruptcy

27   cases now, allowing the Debtors to provide at least some immediate payment (upon confirmation of

28   a plan) to the asbestos claimants, many of whom are aged and desperately ill.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# III.

## DISCUSSION

### A.    Approval of the Settlement is Appropriate

Bankruptcy Rule 9019(a) provides, in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The Debtors believe that the Settlement Agreement is in the best interest of the estates and should be approved.  Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.

> The purpose of a compromise agreement is to allow the Debtor and the creditor to avoid the expense and burdens associated with litigating sharply contested and dubious claims.  [Citations omitted]  The law favors compromise and not litigation for its own sake [citations omitted] . . . [O]n review, we must determine whether the settlement entered into by the Debtor was reasonable, given the particular circumstances of the case.  [Citations omitted].

*In re A&C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

The standards by which courts evaluate a proposed compromise and settlement are well established.  In bankruptcy, a court should approve a proposed compromise and settlement if it is fair and equitable and in the best interests of the debtor's estate and its creditors.  *In re Louise's Inc.,* 211 B.R. 798, 801 (D. Del. 1997); *In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 620 (Bankr. D. Del. 2001).

In determining whether a settlement is within the range of reasonableness, the Court should consider four principal factors:

    (1)    the probability of success in the litigation;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1        (2)     the likely difficulties in collection;

2        (3)     the complexity of the litigation and related expense, inconvenience and delay; and

3        (4)     the interests of the creditors.

4  *In re A&C Properties*, 784 F.2d at 1381; *In re Martin*, 91 F. 3d at 393 (citing *Anderson*, 390 U.S. at

5  424). These factors seek to balance the probable benefit and potential cost of litigating a claim or

6  defense against the benefits of the proposed settlement.

7        Moreover, under the well-established standard for consideration of the merits of a settlement,

8  a settlement should be approved unless it "fall[s] below the lowest point in the range of

9  reasonableness." *In re Teltronics Services, Inc.,* 762 F.2d 185, 189 (2d Cir. 1985). A court is "not to

10  decide the numerous questions of law and fact raised by [an objecting party], but rather to canvass

11  the issues to determine whether the settlement falls within the lowest range of reasonableness, and

12  should therefore be approved." *Id.* A court need not conduct a "mini-trial" to make that

13  determination. *In re Blair,* 538 F.2d 849 (9th Cir. 1976).

14        As set forth below, approval of the Settlement Agreement is in the best interest of the estates

15  because it results in a fair and equitable compromise after consideration of the aforementioned

16  factors.

17        1.     Probability of Success in the Litigation

18        The Debtors submit the probability of success in any litigation to determine the obligations of

19  Maine Bonding has been duly accounted for in the Settlement Agreement. While the Debtors'

20  investigation of the potential claims against Maine Bonding led them to believe that their position in

21  the Coverage Litigation is meritorious, Maine Bonding will vigorously contest the available limit

22  under the Policy and contend that limit has been exhausted by the payments made prior to

23  bankruptcy. Maine Bonding further contends that, even if its policy has not been exhausted, only

24  one policy limit at most remains for Thorpe's asbestos liabilities. Further, Maine Bonding has

25  asserted many defenses to coverage in the Coverage Litigation. Absent settlement, the Debtors will

26  be forced to expend substantial monies and face the inherent risks and delay in litigating these

27  issues.

28        Although the Debtors dispute the contentions of Maine Bonding, if Maine Bonding prevails

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   upon any of its arguments, the Debtors' potential recovery would be substantially reduced, including

2   a risk it might recover nothing. [Fults Declaration, ¶ 25].

3         2.     Likely Difficulties in Collection

4        The difficulty of collection was not a significant factor in the Debtors' consideration of the

5   proposed settlement.

6         3.     Complexity of the Litigation and Related Expense, Inconvenience and Delay to be Encountered in Collection

7        As indicated by the foregoing discussion, the legal and factual issues involved in the

8   Debtors' dispute with Maine Bonding are complex. Those disputes concern the interpretation of

9   complex insurance policies and other alleged agreements. [Fults Declaration, ¶ 26]. The Debtors

10   anticipate that, absent approval of the Settlement Agreement, the litigation with Maine Bonding

11   would consume many years, requiring numerous trial phases and extensive appellate proceedings

12   following the entry of any judgment by the trial court. [Fults Declaration, ¶ 26].

13        The Debtors also anticipate that further litigation will result in the Debtors becoming liable

14   for substantial litigation expenses. While the Debtors have retained contingency counsel to

15   prosecute their coverage claims, the Debtors remain liable for all litigation expenses incurred in the

16   Coverage Litigation. In light of the issues to be litigated and the number of depositions and expert

17   witnesses that will be required to prepare for trial, absent approval of the Settlement Agreement,

18   those expenses would be substantial. [Fults Declaration, ¶ 26].

19         4.     The Interests of Creditors

20        The interests of creditors strongly militate in favor of approval of the Settlement Agreement,

21   as evidenced by the fact that each of the Creditors' Committees and the Future Claimants'

22   Representative support approval of the Settlement Agreement. The Settlement Agreement provides

23   significant dollars in the near term that will help fund the Plan and that will enable the Thorpe Trust

24   to be established to make immediate payments to Thorpe's asbestos creditors, many of whom are ill

25   and/or aged. Further settlement avoids the risks, delays and costs associated with further litigation

26   with Maine Bonding. Accordingly, the interest of creditors also favors approval of the Settlement

27   Agreement. [Fults Declaration, ¶ 27].

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.    No Prejudice to Non-Parties

The interests of third parties who are not beneficiaries of the Settlement Agreement are also

protected.  Asbestos claimants who, without the approval of the Settlement Agreement, might have

asserted claims against or rights in the Subject Insurance Policies will instead be paid from the

proceeds of the settlement, through the establishment of the Thorpe Trust under the Plan or, if the

Plan is not confirmed, from the Thorpe qualified settlement fund.  The non-settling insurers' rights

are not affected by the settlement as the Settlement Agreement does not purport to release any claims

by Thorpe's non-settling insurers or to affect any right of contribution, indemnity or subrogation that

Thorpe's non-settling insurers may have against Maine Bonding.

**B.    Sale of the Policies Pursuant to Sections 363(b) and (f) and (m) is Appropriate**

Section 4.1.3 of the Settlement Agreement provides for the buyback by the appropriate

Zurich Companies of the Insurance Rights, which include any right to or interest in insurance

coverage or proceeds relating to the Subject Insurance Policies, and any Claims relating to the

Subject Insurance Policies that would arise under any theory of law, admiralty or equity, statutory or

otherwise, free and clear of claims and interests. The Court may authorize such relief under section

363(b) of the Bankruptcy Code, which permits a debtor to sell property of the estate, other than in

the ordinary course of business, upon notice and a hearing.  11 U.S.C. § 363(b).  Insurance policies

are property of a debtor's estate. *In re Minoco Group of Companies*, 799 F.2d 517, 519 (9th Cir.

1986).[7]  Sales of estate property are generally approved where a debtor can demonstrate "some

articulated business justification for using, selling, or leasing property outside the ordinary course of

business. . . ." *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19-20 (9th Cir. BAP 1988).[8]  A

debtor's application of its sound business judgment in the use, sale, or lease of property is subject to

great judicial deference. *In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990).  For the reasons noted

above, it is the Debtors' business judgment that the sale of the Insurance Rights to Maine Bonding

---

[7] *See also First Fidelity Bank v. McAteer*, 985 F. 2d 114, 116 (3d Cir. 1993) ("This Court has held that insurance policies are property of the estate...."); *MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 92 (2d Cir.) ("Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."), cert. denied, 488 U.S. 868 (1988); *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986) (same).

[8] *See also In re Continental Airlines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    would benefit the Debtors' estates and their creditors.

2        The Insurance Rights may be transferred free and clear of any claims or interests of any

3    entity. A debtor may sell property of the estate, free and clear of any interest of an entity in such

4    property, if the entity consents. 11 U.S.C. § 363(f)(2). In addition, property may be sold free and

5    clear of interests of an entity if "such entity could be compelled, in a legal or equitable proceeding,

6    to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5).

7        The only entities that might assert a claim against or an interest in the Insurance Rights have

8    consented, or should be deemed to have consented, to the sale, or could be compelled to accept a

9    money satisfaction of such claim or interest. The Committee and Future Claimants' Representative

10   support approval of the Settlement Agreement, and to the extent a claimant or other entity receives

11   notice and does not file a written objection to this Motion, such claimant or other entity should be

12   deemed to have consented to the transaction. Local Bankruptcy Rule 9013-1(1)(k); *In re Channel*

13   *One Communications*, 117 B.R. 493 (E.D. Mo. 1990). Furthermore, any entity seeking recovery

14   against the Subject Insurance Policies could be compelled to accept a money satisfaction of such

15   interest. Thus, a sale free and clear of claims and interests is appropriate because both sections

16   363(f)(2) and (f)(5) are satisfied.

17       The appropriate Zurich Companies are good faith buyers entitled to the protections afforded

18   by section 363(m).

19       A good faith buyer "is one who buys 'in good faith' and 'for value.'"
20       *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992)
         (citing *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)).
21       "Lack of good faith is [typically] shown by 'fraud, collusion between
         the purchaser and other bidders or the trustee, or an attempt to take
22       grossly unfair advantage of other bidders.'" *Id.* (quoting *Community
         Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir.
23       1985)).

24   *Paulman v. Gateway Venture Partners III, L.P. (In re FiltMaine Bondingorp, Inc.),* 163 F.3d 570,

25   577 (9th Cir. 1998). Although the settlement agreement speaks for itself, the parties also confirm

26   that there was no fraud or collusion with respect the negotiations leading up to the settlement, and

27   the Debtors and the Zurich Companies negotiated the terms of the Settlement Agreement in good

28   faith and at arms-length. [Fults Declaration, ¶¶ 28-29; Koscielniak Declaration, ¶¶ 2-5. Accordingly,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    the appropriate Zurich Companies should be deemed entitled to the protections afforded a good faith

2    purchaser under 11 U.S.C. § 363(m), which is a condition of the Settlement Agreement.

3                                                  **IV.**

4                                          **CONCLUSION**

5          WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter an order

6    granting this Motion, and (1) approving the compromise set forth in the Settlement Agreement in its

7    entirety pursuant to Bankruptcy Rule 9019; (2) approving the sale to the appropriate Zurich

8    Companies of the Insurance Rights, free and clear of claims and interests, pursuant to Bankruptcy

9    Code § 363(b), (f) and (m); (3) deeming the appropriate Zurich Companies good faith purchasers

10   within the meaning of Bankruptcy Code § 363(m); (4) authorizing the Debtors to perform their

11   respective obligations under the Settlement Agreement; (5) directing the Parties to perform their

12   respective obligation pursuant to the Settlement Agreement; (6) binding the Debtors' estates, any

13   trustee that might be appointed and any trust that may be established pursuant to Bankruptcy Code §

14   524(g) to the terms and conditions of the Settlement Agreement; (7) making such findings of facts

15   and conclusions of law that are consistent with the foregoing; and (8) granting such other and further

16   relief as the Court deems just and proper.

17   Dated:    November 25, 2009           PACHULSKI STANG ZIEHL & JONES LLP

18

19                                          By:    _/s/ Jeremy V. Richards_
                                                   Jeremy V. Richards
20                                                 Scotta E. McFarland
                                                   Attorneys for Thorpe Insulation
21                                                 Company, Debtor and Debtor in Possession

22                                          CLARK & TREVITHICK

23                                          By:

24                                                 John A. Lapinski
                                                   Leslie R. Horowitz
25                                                 Stephen E. Hyam
                                                   Attorneys for Pacific Insulation Company,
26                                                 Debtor and Debtor in Possession

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

84264-002\DOCS_LA:211367.3                          13